CHIEF JUSTICE HARDIN
delivered the opinion oe the court.
John L. Martin died in 1854, the owner of a large estate, consisting of land, slaves, and personal property, mostly situated in the states of Kentucky, Indiana, and Mississippi, the decedent’s residence and much of the real estate being in Louisville, Kentucky. Having no children living at his death, his only surviving descendants and heirs at law were *583 the following four grandchildren and one great-grandchild; viz., Blanton H. Duncan, the son of the decedent’s daughter Patsy Duncan, deceased; Orville M. Anderson, Patsy D. Anderson (subsequently the wife of R. Ten Broeck), Kate M. Anderson (now the wife of Thomas L. Kennedy), children of the decedent’s daughter Nancy O. Anderson; and Pattie A. Field (now the wife of B. J. Clay), she being the daughter of Charlotte Field, deceased, who was the daughter of Orville Martin, a son of J. L. Martin.
John L. Martin left a will, written by himself, and published in 1852, the construction of which is involved by the questions now before this court for decision.
The testator, after making, in the first clause of his will, some provision for his wife, who was then living, directed and devised by the second clause as follows:
“All the houses and lots that I now own, or that I may hereafter purchase, in Kentucky or Indiana, it is my will that my executors, hereafter named, shall lease to good tenants until the 1st day of January, 1872, and the proceeds, when collected, to be divided as hereinafter directed, reserving always a sufficient sum to keep the tenements in good order and good repair.”
And in the third clause of the will he directed that certain tracts of his lands be sold, and debts due from particular individuals collected, and that the proceeds be invested in productive real estate in the city of Louisville, and that the same be leased to good tenants until the 1st day of January, 1872, upon the terms and conditions directed in said second clause.
And in the fourth clause of the will he provided for the management of his plantation of about two thousand acres in the state of Mississippi, with his slaves and stock and other personal property thereon, until the 1st day of January, 1872, and directed that the net proceeds thereof be divided as provided for in subsequent clauses of the will.
*584 After providing in the sixth and seventh clauses of the will for the emancipation of his slaves on said plantation, and their removal and colonization at the expense of the estate, to be derived from the plantation, he directed and devised in the seventh clause as follows:
“And the plantation, negroes, and stock of every character and description shall be divided among the heirs hereafter named; but I should prefer the plantation kept up and carried on, on joint account of the heirs, until the 1st day of January, 1880; but I leave this optional with a majority of my heirs.”
In the eighth clause of the will provision is made for the care and maintenance of the testator’s old and infirm slaves; after which, and by the ninth clause, he devised and directed as follows:
“Bank and other stocks that I now own, or that I may hereafter purchase, unless disposed of prior to my death, shall remain in my name for three years after my decease, when it shall be divided as hereinafter directed. Dividends from stocks, proceeds for rents, and proceeds of crops from plantation shall be paid over every three, six, nine, twelve, or fifteen months, viz.: over—
Thomas Anderson, trustee for Kate Kennedy, one fifth.
Orville M. Anderson, one fifth.
Patsy D. Anderson, one fifth.
B. H. Duncan, one fifth.
P. A. Field, Colonel C. J. Field, in trust, one fifth.
“None of the five above-named nor any other person or persons shall have power or authority to alienate or encumber any part of my estate, or to anticipate the rents of houses, dividends on bank or other stocks, or the stock that remains in my name, for three years after my decease, when, from this clause, it shall be divided among the five above-named, giving to each one fifth. Nor shall he or she, or any wife or husband he or she may have, have any power or authority to sell or *585 convey, nor shall any part or parcel of my estate, real or personal, be liable for his, her, or their debts; but should any of the above-named five die without issue, then and in that case to be divided among the survivors.”
From the death of the testator until the 1st day of January, 1872, the executors named in the will, or part of them, acted in the discharge of the duties and trusts therein devolved upon them, and by investments made in pursuance of the third clause of the will added largely to the real property of the estate in the city of Louisville.
It appears also that they managed the plantation and slaves in Mississippi in accordance with the directions of the will, except that they were interrupted in doing so by the late civil war and its results.
In 1857 Orville M. Anderson, one of the five devisees named in the will of J. L. Martin, died, leaving a will in which, after making certain specific bequests, he devised all the residue of his estate, described as including the one fifth part of J. L. Martin’s residuary estate, to George Anderson, in trust for the sole and separate use of his daughter and only child, Mary Anderson, who subsequently intermarried with M. Lewis Clark.
This suit in equity was instituted by Blanton H. Duncan for a partition of the estate, and to have allotted to him in severalty one third part thereof, which he claimed. as having descended to him from J. L. Martin, subject only to restrictions, trusts, and encumbrances imposed by the will. The other parties in interest being brought before the court, the following questions were, by appropriate pleading, presented for its decision:
1. As between Duncan and Clay and wife, who represented two of the three children of the testator on the one side, and the other parties, representing the other of said children on the other side, did the will operate to devise the whole estate, or *586 leave, that part of it not specifically disposed of to pass by the law of descent to the respective descendants of said three children of J. L. Martin?
2. If the testator did not die intestate as to any part of his estate, but devised equal or particular interests therein to the five persons named in the ninth clause of the will, were those interests vested or contingent before the first day of January, 1872; and whether vested or contingent, were the estates of those in whom they might then be vested severally subject to be defeated in the event of the death of the devisee without issue?
The court below upon final hearing was of the opinion that the whole estate was devised, and that the will directed an equal division between said five devisees to be made as to the real estate on or after the 1st of January, 1872, “as between the survivors of them, if any of them were then dead without leaving issue,” but “that until that time their rights were altogether contingent, and consequently no part of the estate passed by O. M. Anderson’s will; but that on the 1st of January, 1872, their contingent interests became absolute in the survivors and Mrs. Clark.”
From a judgment directing a partition in accordance with these conclusions Duncan and Clay and wife have appealed to this court, and "W. G. Anderson, as trustee of Mrs. Clark, has also prosecuted an appeal, and both appeals have been heard and will be determined, together.
The first and most important inquiry here, as in the court below, is as to the meaning and intention of the testator touching the disposition of his real estate. That intention, whether it was to devise the estate in a particular way or die intestate as to it, must, according to the well-established rules of construction, be judged of exclusively by the words of the instrument as applied to the subject-matter and surrounding circumstances.
*587 Although J. L. Martin was'certainly a man of vigorous intellect and fine business capacity, he was, as the will intrinsically shows, unskilled in the use of words of particular legal import, as well as in the preparation of legal instruments; hence the holographic will before us for construction, though very explicit as to many particular purposes of the testator, is peculiarly vague and indefinite in almost all of its provisions relating to the ultimate division of his large and valuable real estate among his descendants, which might be supposed to have been his paramount object in making his will.
In the argument for the appellants the conclusion is urged that from the care and even precision with which the testator provided for the welfare of his slaves, the management of his plantation in Mississippi, the distribution of incomes, and the preservation of the real estate, and its protection from improvident disposition in the hands of his beneficiaries, he has manifested a purpose of intestacy as to his real estate, particularly that in Kentucky and Indiana. But it seems to us that this evidence of particularity on the part of the testator conduces equally well to prove that if it was the intention of J. L. Martin, notwithstanding his will, to leave his real estate undevised and to pass by descent to his heirs at law] he would have taken care to express that intention in the will'; whereas, on the contrary, although the real estate is repeatedly mentioned in the will, that instrument contains no expression excluding such estate from its operation. But in our opinion the entire will, so far as it relates to the real estate, not only implies an intention on the part of the testator to devise it, as well as the income arising from it, but in the ninth clause he expressly did so by the words “it shall be divided among the above-named five, giving to each one fifth;” the pronoun it having reference to the real estate, as well as rents and dividends mentioned in the preceding words of the same sentence.
But although we concur with the chancellor of the court *588 below that the testator devised his whole estate, and directed the real estate to be divided equally between his five named descendants on or after the 1st of January, 1872, we can perceive no maintainable ground for either the conclusion that the will vested the estate in the executors, to be held by them until the 1st of January, 1872, or the further conclusion that until that time the rights of said five named devisees “were altogether contingent.” The will certainly devolved on the executors important powers and trusts appertaining to the estate; but, as we construe its provisions, it vested in them no particular estate in the property; and although it postponed the division of the real estate until the 1st of January, 1872, it operated to vest an estate in fee in each of said five devisees, subject to the restrictions imposed by the will and the powers and trusts conferred on the executors, and subject also to be defeated in the event of the death of the devisee “without issue” capable of inheriting, as provided for in the ninth clause of the will. (McKay v. Merrifield, 14 B. Mon. 260.)
We concur in what seems to have been the conclusion of the court below, that the conditional devise over to the survivors of the devisees, in the contingency of the dying of any of them without issue, had reference to the 1st of January, 1872, the time contemplated by the testator for the division of the real estate, and could not thereafter take effect. (Hughes v. Hughes, 12 B. Mon. 115; Wren v. Hynes’s adm’r, 2 Met. 129.)
But we are of the opinion that the court erred in adjudging that Mrs. Clark took a fifth part of the estate in litigation as a devisee of J. L. Martin, and that the will of her father, O. M. Anderson, did not operate to pass the same to W. G. Anderson, as her trustee, for her sole and separate use.
On this branch of the case we will only add, to prevent misapprehension, that while there is a substantial analogy between this and the case of Wren v. Hynes’s adm’r (supra) as *589 to the limitation placed on the devises over, to take effect upon the failure of the estates first devised, by the death of the devisees within the time to which the alternative devises over referred, that case differs essentially from this in the fact that in that case the devise was in effect to certain persons or their heirs — in other words, their issue — should any of them die leaving issue within the prescribed period of survivorship; whereas in this case there is no devise over to the issue of either of the five devisees of J. L. Martin, nor any failure of their titles anticipated to give effect to the contingent devise over, unless some of them should die without issue, which event did not happen.
The sequence of the foregoing views and conclusions is that there is no error in the judgment to the prejudice of the appellants B. H. Duncan and B. J. Clay and wife, but that it is erroneous as to the rights of Mrs. Clark and "W. G. Anderson, her trustee.
Wherefore the judgment is affirmed on the appeal of Duncan and Clay and wife, and reversed on the appeal of the trustee Anderson, and the cause is remanded for further proceedings not inconsistent with this opinion.