Harvey, &c. v. Bell, &c.

---

CASE 66—SUIT BY W. P. HARVEY AND OTHERS AGAINST W. C. BELL AND OTHERS FOR LAND INVOLVING THE CONSTRUCTION OF A WILL.

# Harvey, &c. v. Bell, &c.

APPEAL FROM MERCER CIRCUIT COURT—M. C. SAUFLEY, CIRCUIT JUDGE.

FROM THE JUDGMENT HARVEY, &C., APPEAL. AFFIRMED.

WILLS—CONSTRUCTION—ESTATE DEVISED—DYING WITHOUT ISSUE— FEE SIMPLE—STATUTES—LIMITATION OF CONDITION.

1. Act 1796, sec. 11, (1 Morehead & B. Ky. St., p. 443), altered the common law rule that words of inheritance were necessary to the creation of a fee by declaring that every estate in lands thereafter conveyed or devised should be deemed a fee simple, though words previously necessary to convey an estate of inheritance should not be added if a less estate were not limited by express words, or should not appear to have been granted by construction or operation of law. In the revision of 1851 (2 Stanton's Rev. St., p. 227), the provision reads "Every estate in land created by deed or will without words of inheritance shall be deemed a fee simple or such estate as the grantor or testator had power to dispose of, if less estate be not limited by express words or by necessary inference;" and in the revision of 1873 (Gen. St. p. 585), the provision appeared in its present form (Ky. St. 1903, sec. 2342), which provides that unless a different purpose appears every estate in land created by will

Harvey, &c. v. Bell, &c.

or deed without words of inheritance shall be deemed a fee
simple. HELD, that, where a will devised lands with a provision
that in case of either of the devisees dying without issue the prop-
erty devised to one so dying should be divided among the sur-
vivors of the class, the condition as to the death was not limit-
ed, under section 2342, to death in testator's life time.

2. By Act 1796 (1 Morehead & B. Ky. St. p. 442), estates tail were
made estates in fee simple, which provision was brought into the
Revised Statutes (2 Stanton's Rev. St. p. 227), and thence into
Ky. St. 1903, sec. 2443.  Section 2344, first enacted in the revision
of 1851 (Stanton's Rev. St. p. 227), provides that unless a dif-
ferent purpose be plainly expressed in the instrument, every
limitation in a deed or will contingent upon a person dying with-
out heirs or without children or issue, or other words of like
import, shall be construed a limitation to take effect when such
person shall die unless the object on which the con-
tingency is made to depend is then living, or, if a child
of his body, such child be born within ten months next there-
after. HELD, that, there being a question whether the words
"dying without issue" referred to an indefinite failure of issue and
created an estate tail, section 2344 was passed to prevent such
devises being held estates tail, and hence fee simple; the statute
merely abolishing the common-law rule by which such words
were construed to refer to an indefinite failure of issue; and
therefore, where a will devised lands with a provision that, in
case of the death of either of the devisees without issue, the
property devised to the one so dying should be divided among
the survivors of the class, the condition as to the death was not
limited under section 2344, to their death in testator's life time.

3. Ky. St. 1903, sec. 4839, provides that a will shall be construed, with
reference to the real and personal estate comprised in it, to
speak and take effect as if it had been executed immediately be-
fore the death of the testator, unless a contrary intention shall
appear by the will.  Testator's will devised property, real and
personal, to his four grandchildren, and the will provided that,
if either of them should die without issue, the property devised
to the one so dying should be equally divided among the surviv-
ing grandchildren or their issue. The issue was whether the
condition as to the death of a devisee without issue
was limited to death in testator's life time.  The grandchil-
dren were children of testator's deceased daughter, and the will
directed that their father should hold the property devised in
trust.  In two clauses of the will testator had given specified per-
sonalty to certain of the grandchildren, and had used the words,

"I bequeath absolutely," but such language was not used in any other clause. By one clause of the will testator devised one-fourth of the residue of his estate to the children of one of the grandsons or their issue, subject to a provision for his support, such grandson being then unmarried. By another clause it was provided that, if any of the devisees contested the will, their part should go to the others not contesting, "to be held in the same way as the devise to them so taking." HELD that it was evident that the general scheme of testator was to prevent his property falling to those strangers to his blood, and, in view of the various provisions, the condition as to the death of the devisees without issue was not limited to death in the lifetime of testator.

4. Testator devised real estate and personalty to the four children of a deceased daughter, providing that in case of the death of any one of them without issue the share of the one dying should go to the survivors or their issue, and it was provided that the property should be held in trust by the father of the children, who might at any time he deemed wise transfer any or all of the property to the devisees, or any of them, relieving it from the trust. HELD, that the dying without issue was not limited to such time as the trustee should convey the realty to the devisees.

HELM, BRUCE & HELM AND ROBT. HARDING, FOR APPELLANTS.

W. S. PRYOR, W. G. WELSH AND E. H. GAITHER, FOR APPELLEES

(No briefs—record misplaced.)

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

This controversy involves the title to 356 acres of land in Mercer county and certain town lots in Harrodsburg, formerly owned by William Payne, who died testate in the year 1890. He had but one child, a daughter, who married Dr. W. P. Harvey, and died many years before her father, leaving four children, William P., Sibbie May, Lila Kate, and Frank Wayne Harvey; all of them, at his death, of age. William P. Harvey died on May 9, 1891, unmarried, and without issue. Sibbie May married W. C. Bell, and died on April 2, 1897, leaving surviving her one child, W. C. Bell, Jr. Lila Kate

married J. W. Loving, and died childless on February 12, 1899. Frank Wayne Harvey, on December 12, 1898, in consideration of $12,500—$7,300 paid cash, and $5,200 to be paid in three years—conveyed to W. E. Mitchell two store-houses and lots in Harrodsburg and an undivided one-third interest in the 356 acres of land. On October 17, 1899, in consideration of $1 and other consideration, he conveyed to his father, Dr. W. P. Harvey, the same property; also his interest in the real estate vested in his sister Lila under the will of their grandfather. After this he died on July 8, 1902, unmarried, and without issue. So that the little boy, W. C. Bell, Jr., is the only living representative in blood of the four grandchildren of the testator. It is insisted for him that he is, under the will of William Payne, the sole owner of the property in contest. It is insisted for Mitchell that Frank Wayne Harvey took in fee under the will the property devised to him, and that Mitchell's title is therefore good. It is insisted for Dr. Harvey that the children took the estate devised to them in fee, and that he, as heir at law of those who are dead without issue, is entitled to the interest they held in the property at their death. The controversy turns on the proper construction of the will, which is as follows:

"Realizing the uncertainty of life, and being of sound mind and disposing memory, I, Wm. Payne, of Harrodsburg, Ky., do make this my last will and testament.

"1. I direct my executor to sell all my personal property, except as hereinafter directed, collect all debts due me, pay all my just debts, and the residue he is to hold and dispose of as herein devised.

"2. I hereby specifically devise to my granddaughter, Lila Kate Harvey, in trust as hereinafter named, two store buildings [here follows description].

"3. I hereby specifically devise to my granddaughter, Sibbie May Harvey, in trust as hereinafter stated, two store buildings and lots [here follows description].

"4. I hereby specifically devise to my grandson, Frank Wayne Harvey, in trust as hereinafter stated, my two store buildings and lots [here follows description].

"5. I bequeath absolutely that all my beds, bedding, furniture, books and pictures, tableware be divided equally between my two granddaughters, Lila Kate and Sibbie May Harvey.

"6. I bequeath absolutely to my grandson, Frank Wayne Harvey, my gold watch and chain and breech-loading shotgun.

"7. I devise and bequeath three-fourths of all the residue of my estate, whether real, personal or choses in action, in trust, to my aforesaid granddaughters and my aforesaid grandson, Frank Wayne Harvey, to be equally divided between them.

"8. The property or interest in property herein devised or bequeathed to my said grandchildren, Lila Kate, Sibbie May and Frank Wayne Harvey, in trust, to be managed and controlled for their respective benefits by their father, W. P. Harvey, whom I hereby appoint my executor and their trustee, and desire that he shall act in both said capacities without bond or security. Said trust is qualified thus: If said W. P. Harvey deems it wise at any time he may hand over all or any part of their property to said devisees, or any of them, at any time, and free the same from trust. The evidence that the same is so freed from trust shall be the written deed of said W. P. Harvey filed and recorded as other deeds, both as to the realty and personalty so freed from trust. I also empower said W. P. Harvey to appoint his successor as trustee, but the freeing said property from trust is a power lodged only in said Harvey as trustee.

"9. Should either of my said grandchildren, Lila Kate Harvey, Sibbie May Harvey, or Frank Wayne Harvey, die without issue of his or her body living, I devise the property herein devised to the one so dying to be equally divided between the remaining ones or their issue; or if all should so die without issue, then their respective shares I devise to ————.

"10. Should the contingency arise as provided for in the next preceding section (9) of this will, the property thus received by my said grandchildren or either of them is to be in trust under the same powers as expressed in the eighth clause of this will.

"11. The other fourth of the residue of my property and estate, three-fourths of which is disposed of in the 7th clause of my will, I devise and bequeath to the children of my grandson, Wm. P. Harvey, or their issue. Should my said grandson, Wm. P. Harvey die without child or children or their issue, the estate devised and bequeathed by this clause or section of my will, I devise to be held and disposed of as provided in the 9th clause of this my will.

"12. The said property I devise in the said eleventh clause or section of this will I put in the hands of my son-in-law, W. P. Harvey, as trustee to control and manage as he may deem best; and I hereby empower him at his discretion to use the income, issues or profits for the comfortable support and maintenance of any said grandson Wm. Payne Harvey during his life, but it is to be distinctly understood that I give my said grandson no interest in said income, issues or profits, leaving it wholly discretionary with my said trustee or his successor to use the said income, issues or profits in that way if he deems proper. I specially direct that said income. issues and profits can not be alienated or charged in any way by my said grandson, Wm. Payne Har-

vey, or any creditor of his; and I hereby specially declare and will that any attempt to alienate said income, issues or profits by said grandson, or any attempt to subject said income, issues or profits by any creditor of said William Payne Harvey, shall terminate the right to use any of said issues, income or profits for the support and maintenance of said Wm. Payne Harvey.

"13. I hereby provide that if any of my devisees, or my said grandson, Wm. Payne Harvey, contests this will, or tries to cancel the same by any proceeding in court, then the provisions in this will as to such contestee shall be considered annulled, and such contestee shall have only $100.00 of my estate in lieu of the devise as to such, and in such event the lapsed devise or bequest of such is to go to those of my said grandchildren, Lila Kate, Sibbie May, Frank Wayne Harvey, who do not contest, to be held in the same way as the devise to them so taking. Should my grandson, Wm. Payne Harvey, so contest my will, then and in such event, the discretionary power lodged in my trustee as to said income, issues and profits is taken away from said trustee, and in such event the said income, issues and profits are to be paid over to the devisees not contesting.

"14. I hereby empower my said executor and trustee to sell any or all of said real estate specifically or generally devised and reinvest the same either in or out of this State, the reinvested property to be held on the same trusts as the original."

The circuit court adjudged the property to W. C. Bell, Jr. Appellants maintain that the condition as to the death of the devisees without issue is limited to their death in the lifetime of the testator, and rely on section 2342, Ky. St., 1903: "Unless a different purpose appear by express words or necessary inference, every estate in land created

by deed or will without words of inheritance shall be deemed
a fee simple, or such other estate as the grantor or testa-
tor had power to dispose of." At common law words of in-
heritance were essential to the creation of a fee, and great
strictness was applied in the enforcement of the rule. 2
Blackstone, 108. To remedy this it was enacted in this
State by section 11 of the act of 1796 as follows: "Every
estate in lands which shall hereafter be granted, conveyed
or devised to one, although other words heretofore neces-
sary to transfer an estate of inheritance be not added, shall
be deemed a fee simple, if a less estate be not limited by ex-
press words or do not appear to have been granted, con-
veyed or devised by construction or operation of law." 1
Morehead & B. Ky. St., p. 443. In the revision of 1851
the verbiage was changed as follows: "Every estate in land
created by deed or will without words of inheritance shall
be deemed a fee simple or such estate as the
grantor or testator had power to dispose of, if a
less estate be not limited by express words or by neces-
sary inference." 2 Stanton's Rev. St., p. 227. In the re-
vision of 1873 this was again changed and put in the present
form. Gen. St., p. 585. The rule is that the mere change
of words in a revision is not to be regarded as intended to
change the existing law, unless the new phraseology purports
an intention to work a change in the sense. Overfield v.
Sutton, 1 Metc., 624. The idea conveyed in all three of the
forms above given seems the same, and we are satisfied the
Legislature had not in mind, in changing the form of the
provision, making any change in the other rules of law
governing the construction of wills.

Appellee also relies on section 2344, Ky. St., 1903: "Un-
less a different purpose be plainly expressed in the instru-
ment every limitation in a deed or will contingent upon a

person dying without heirs or without children or issue or other words of like import shall be construed a limitation to take effect when such a person shall die, unless the object on which the contingency is made to depend is then living, or if a child of his body, such child be born within ten months next thereafter." This provision means that, unless a different purpose is expressed, every limitation in a deed or will contingent upon a person dying without issue shall take effect when this person shall die, unless the issue (the object on which the contingency is made to depend) is then living, or if a child of his body be born within ten months thereafter. It was first enacted in the revision of 1851. See 2 Stanton's Revised Statutes, p. 227. By the act of 1796 estates tail were made estates in fee simple. 1 Morehead & B. Ky. St., p. 442. This provision, with a similar change of form to that above referred to, was brought over into the Revised Statutes (2 Stanton's Rev. St., p. 227), thence into the General Statutes and our present revision. See Gen. St., p. 825; Ky. St., 1903, section 2443. But under the act of 1796 there was a prolonged controversy whether the words "dying without issue" referred to an indefinite failure of issue, and so created an estate tail. To settle this question and prevent such devises being held estates tail, and this being turned into a fee the Legislature enacted the provision above quoted. The statute simply abolishes the common law rule by which such words were construed to refer to an indefinite failure of issue, and makes the estate to depend only on the failure of issue at the death of the person named. At the time of its enactment it was so construed by this court, and this contemporaneous construction can not now be departed from. See Daniel v. Thompson, 53 Ky., 662; also Hart v. Thompson, 42 Ky., 482, and cases cited.

We therefore conclude that the rights of the parties are not affected by either of these provisions, and are to be determined by the general rules governing the construction of wills.

In the elaborate argument made by the distinguished counsel many authorities are relied on as to the proper meaning of words of survivorship, and, as there seems to be an apparent conflict in the decisions of this court on the sub ject, we have examined them with care. We find that, while there are in some of the opinions *dicta* not readily to be reconciled, the decisions themselves are more harmonious, and may be summed up as follows:

"1. Where an estate is devised to one for life, with remainder to another, and, if the remainderman die without children or issue, then to a third person, the rule is that the words "dying without children or issue" are restricted to the death of the remainderman before the termination of the particular estate." Thus, in Birney v. Richardson, 35 Ky., 424, the testator devised the estate to his wife for life, or during her widowhood, and at her death or marriage to be equally divided by his executors between his children; directing that if "any or either of the above mentioned children should die without a lawful heir begotten of their body, then his or her part of the estate to be equally divided among my surviving children." The children were at the time infants. The widow married about two years after the testator's death. After this a daughter married, and subsequently died without issue. It was held that her estate became absolute on the marriage of her mother, and was not defeated by her subsequent death without issue. In Wren v. Hynes, 59 Ky., 129, the testator directed the dividends on his bank stock paid to his widow until the youngest child arrived at age; adding this: "It

is my will and desire that when my youngest child shall arrive at the age of twenty-one years, the twelve thousand dollars set apart in bank stock shall be equally divided among all my surviving children or their heirs." One of the daughters married and died without issue during the life of the widow, and before the youngest child was twenty-one years of age. It was held that the death without issue before her mother and before the youngest child was of age defeated her interest in the estate. To same effect are Pool v. Benning, 48 Ky., 623; Mercantile Bank v. Ballard, 83 Ky., 481 7 R., 478, 4 Am. St. Rep., 160; Ferguson v. Thomason, 87 Ky., 519, 10 R., 562, 9 S. W., 714; Dickison v. Ogden, 89 Ky., 162, 11 R., 385, 12 S. W., 191; Pruitt v. Holland, 92 Ky., 641, 13 R., 867, 18 S. W., 852; Lewis v. Shropshire, 68 S. W., 426, 24 Ky. Law Rep., 331; Baxter v. Isaacs, 71 S. W., 907, 24 Ky. Law Rep., 1618.

2. On the same principle, where property is devised to one or more infants, and is to be held by their trustees or guardians until they are twenty-one years old, and then be turned over to them, or divided between them, with the proviso that, if they die without issue, it shall go to the survivors, or, if all die, to a third person, it has been held that the limitation as to dying without issue is to be limited to a death in infancy before the period of distribution. Hughes v. Hughes, 51 Ky., 115; Thackston v. Watson, 84 Ky., 206, 8 R., 193, 1 S. W., 398; Trabue v. Terry, 9 S. W., 161, 10 Ky. Law Rep., 345; Wilson v. Bryan, 90 Ky., 482, 12 R., 431, 14 S. W., 533; Jones v. Moore, 96 Ky., 273, 16 R., 561, 28 S. W., 659; Kephart v. Hieatt, 78 S. W., 425, 25 Ky. Law Rep., 1602.

3. And where, by the will, the devise is to a class, and the period of division is postponed, even where the devisees are not infants, it has been held that the limitation as to

dying without issue must be confined to a death without issue before the period of division _fixed by the will. Duncan v. Kennedy, 72 Ky., 580; Webster v. Webster, 93 Ky., 632, 15 R., 97, 21 S. W., 332.

4. On the other hand, where there is no intervening estate, and no other period to which the words "dying without issue" can be reasonably referred, they are held, in the absence of something in the will evidencing a contrary intent, to create a defeasible fee which is defeated by the death of the devisee at any time without issue then living. Thus, in Hart v. Thompson, 42 Ky., 482, the devise was: "My will and desire is that all my estate, both real and personal, be equally divided among my said nine children, then living or their lawful heirs if dead, and if either of my nine children should die without heirs of their body, lawfully begotten, that their part, so allotted and given them as aforesaid, be equally divided amongst my other children then living." One of the devisees died a single man, and without issue, a few years after his father, leaving a will by which he devised his share of the property. It was held in an opinion by Judge Ewing that he took a defeasible fee, which was defeated by his death without issue, and that his share passed to the other children then living. The same rule was followed in Deboe v. Lowen, 8 B. Mon., 616, Judge Marshall writing the opinion, where the devise was to the children of the testator, with this qualification: "It is also my will that if any of my children die without lawful heir or heirs the property hereby willed go to my surviving children." The question was again presented in Daniel v. Thomson, 53 Ky., 662, where the will read: "It is my wish that all the property that may be included in this my last will and testament to my sons C. R. and J. R. Thomson, in case either or both dying without leaving a law-

ful heir begotten of their own body, in that case the property so left shall be equally divided among their sisters or their legal representatives." C. R. Thomson sold and conveyed to Henry Daniel the land devised to him, and thereafter died unmarried, and without issue. The children of the sisters sued Daniel for the land and recovered. The case was twice argued orally, and in an elaborate opinion by Judge Marshall the judgment of the circuit court was affirmed. In Harris v. Berry, 70 Ky., 113, the testator devised his estate to his fifteen children, providing: "Should any of my children die before they attain lawful age or without lawful issue, the portion of my estate bequeathed to them to be equally divided between the survivors." One of the sons died after the testator, without issue, and after reaching his majority. It was held that his share went to the other children or their representatives.

In Sale v. Crutchfield, 71 Ky., 636, the testator devised to his son Edmund Lampton eight acres of land in Louisville, providing: "And if 'said Edmund shall die without lawful issue, it is my will and desire and I do hereby direct that the estate herein devised to him shall go to his sisters in equal portions and if either or both of them be then dead, to the child or children of such dead sister, the children taking the share of the dead parent." Edmund Lampton sold off the land in lots, and many years afterwards died childless. After his death the surviving sister and the children of the one who had died sued his vendees for the property. On an elaborate review of the authorities the judgment in their favor was affirmed. In Crozier v. Cundall, 99 Ky., 202, 18 R., 116, 35 S. W., 546, the testator devised certain property to his daughters Almyra and Patsy, "to them and their heirs forever," with this clause qualifying the devise: "In the event that either of my daughters Patsy or Almyra should

die without bodily issue, then such portion of my estate as is devised to them shall revert back to and be equally divided between the rest of my children and the children of those who are dead." Almyra sold part of the land devised to her. Both Almyra and Patsy died without issue, leaving wills disposing of their estates. It was held that they took only a defeasible fee, and that the property passed under their father's will. To the same effect, see Moran v. Dillehay, 8 Bush, 434; Best v. Conn, 10 Bush, 36; Parrish v. Vaughn, 12 Bush, 97; Bayless v. Prescott, 79 Ky., 252, 2 R., 262; Hood v. Dawson, 98 Ky., 285, 17 R., 880, 33 S. W., 75; Dorsey v. Maddox, 103 Ky., 253, 19 R., 1903, 44 S. W., 632; Turpin v. Turpin, 4 Ky. Law Rep., 438; Whayden v. Wilson, Id., 827; Ecton v. Smith, 6 Ky. Law Rep., 216; Varble v. Phillips, 20 S. W., 306, 14 Ky. Law Rep., 363; Collins v. Thompson, 43 S. W., 227, 19 Ky. Law Rep., 1194; Smith v. Ballard, 117 Ky., 179, 77 S. W., 714, 25 Ky. Law Rep., 1290. In Birney v. Richardson, 5 Dana, 424, which involved only personalty this was said: "The dying without issue seems to have been intended not as a qualification of the right of each legatee after actual distribution among them, but an explanation merely as to the mode of division." Also this: "Had the bequest been direct and immediate to the testator's children as tenants in common, then the only question as to dying without issue would have been whether it meant a death in the testator's lifetime, or at any time, however remote. And, nothing else appearing to aid in the interpretation, the law would incline to construe 'dying without issue' as meaning the death of the legatee without issue in the testator's lifetime." In Wren v. Hines, which was also a controversy as to personalty. it was again said: "Where a devise is made to several persons as a class, with words of survivorship annexed, it becomes material to determine, in order that a

proper construction may be given to the devise, to what period the words of survivorship are intended to refer. If the gift is to take effect in possession immediately after the death of the testator, the uniform rule of construction is to refer the words of survivorship to that event, and to regard them as intended to provide against the contingency of the death of the object of the testator's bounty in his lifetime. In such a devise, when made to several persons by name, there is no other period to which the words could be made to refer."

But in these cases the question was not before the court, because the devises were not direct. In the case of direct bequests of personalty, which the court evidently had in mind, the rule stated obtains, for it perishes with the using, and the testator is not presumed to look beyond the distribution he desires his executor to make. But in devises of real estate, as shown in the cases cited, the rule is different; and in these words of survivorship will not be referred to death without issue in the lifetime of the testator, unless there is something in the will showing this was his meaning. It is alleged here in the petition to which the court sustained a demurrer that the testator left an estate of about $60,000—$10,000 in personalty and $50,000 in land. The allegations of the petition must be taken as true on demurrer, and we have, therefore, a case where both realty and personalty are involved and where both are, by the will, placed in the hands of the trustee; the personalty standing as the realty, and not being directed to be distributed by the executor to the devisees.

Appellants rely on Wills v. Wills, 85 Ky., 486, 9 R., 76, 3 S. W., 900; Carpenter v. Hazelrigg, 103 Ky., 534, 20 R., 231, 45 S. W., 666; and Jackman v. Jackman, 73 S. W., 776, 24 Ky. Law Rep., 2245. In the Wills case it was held

that the devisee did not take a defeasible fee, but either a life estate or a fee simple; and then from a comparison of all the provisions of the will, the conclusion was reached that the testator intended to pass to the devisees, who were his children, the property in fee.

In Carpenter v. Hazelrigg and Jackman v. Jackman the property was devised to a class, and directed to be divided between them. The devisees survived the period of division, and these cases may be rested on the ground that the dying without issue was intended merely as a guide to the mode of division. The dicta above referred to were alluded to in the Wills and Carpenter cases, although they involved real estate; but these cases plainly were not intended to announce a new rule, or to depart from the principles theretofore laid down, and they are not to be understood as conflicting with the previous decisions of the court. All the cases recognize the rule that, where there is any period to which words of survivorship can be reasonably referred, they will be so construed. All the cases also recognize the rule that in the end all rules of construction are but means of ascertaining the testator's intention, and that, when this is apparent from the whole will, it must be enforced. No Procrustean rule can, therefore, be laid down as to the construction of words of survivorship, for while the words in one clause may have a well defined legal meaning, there may be other things in the will making it manifest that the testator actually used the words in a different sense, and when this is the case the rights of the parties must be determined by the meaning of the will taken as a whole. It is rare that two wills are exactly alike, and so, after all, rules of construction are often difficult of application. From this arises much of the apparent confusion in the decisions.

Under these principles, how stands the case before us?

Did the testator contemplate the death of the devisees without issue in his lifetime, or intend the words of survivorship only to apply in this event? In the fifth and sixth clauses of his will the testator uses the words "I bequeath absolutely." In all the other clauses words of different effect are used, thus showing that he had in mind the difference between an absolute devise and a limited estate, for in all other clauses the devises are not absolute, but limited. No part of the will took effect until the testator's death, and it must be presmed the testator meant something when he devised part of his estate absolutely and placed the remainder of it under elaborate limitations. Section 4839, Ky. St., 1903, provides: "A will shall be construed with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." By the eleventh clause of the will the testator devises one-fourth of the residue of his estate to the children of Wm. P. Harvey, or their issue, subject to a provision for his support, and, should he "die without child or children or their issue," this part of the estate is to go as provided in the ninth clause. Wm. P. Harvey then had no children, and, so far as appears, was unmarried. It was possible he might marry, have children, and yet survive all his children or grandchildren. Yet it is incredible that the testator, his grandfather, in making the will, could have contemplated all this occurring in the testator's lifetime. The property devised in the eleventh clause is by the twelfth clause charged with the support of Wm. Payne Harvey, which must of necessity refer to a support after the death of the testator. By the thirteenth clause, if any of the devisees contested the will, their part of the estate should go to the others not contesting, "to be held

in the same way as the devise to them so taking." There could be no contest of the will until after the testator's death, and in this event the contesting devisee lost his devise; yet it did not then pass to the others absolutely, but "to be held in the same way as the devise to them," thus showing that the testator had in mind in "the devise to them" conditions which were to extend beyond his death. This is emphasized by the last of the thirteenth clause, requiring the trustee, if Wm. Payne Harvey contested the will, to pay over to the other devisees the income from the fourth of the estate devised in the eleventh and twelfth clauses; the distinction being here sharply made between the income and the corpus of the estate in a contingency which must occur, if at all, after the lifetime of the testator. By the tenth clause it is stipulated that, if the contingency provided for in the ninth clause arises—that is, if any of the devisees die without issue, and this share go to the others—then "the property thus received" is to be in trust under the same powers as expressed in the eighth clause. The devisees could receive nothing under the will during the lifetime of the testator, and if he had had in mind only a death in his lifetime, he would simply have directed a division of the estate among the survivors, for in this event they would have taken directly; but the use of the words "the property thus received" shows the testator contemplated the devisees might receive property under the ninth clause after the division directed in the seventh clause was made. The devisees were all of age, and if the testator had not in view preserving the estate for his own blood as against the collateral heirs of the devisees, all then unmarried, the whole fabric thus constructed by the will was meaningless. The purpose of clauses 11 and 12 was

to secure this part of the estate to the testator's unborn great-grandchildren, the children of Wm. Payne Harvey. The devise to these possible great-grandchildren illustrates the purpose of the eighth, ninth, and tenth clauses, which were all part of one plan. The testator aimed to prevent his property falling to those who were strangers to his blood by reason of the death of any of his grandchildren (then unmarried) without issue. With this view he directed in the tenth clause that the property falling to the survivors by reason of the death of any of the devisees without issue as provided in the ninth clause should be held under the same trusts as the property originally falling to them. He seems to have entertained the design of providing to whom the property should go if all his blood became extinct, but the blank left for this purpose at the end of the ninth clause for some reason was never filled; yet this evidences his purpose that the property should not go to others as long as any of his blood remained.

We therefore conclude that the limitation as to the death of any of the grandchildren without issue can not be restricted to a death in the lifetime of the testator.

It remains to determine whether there is any other period to which it may be reasonably referred. The eighth clause, creating the trust as shown, contains these words: "If said W. P. Harvey deems it wise at any time he may hand over all or any part of their property to said devisees, or any of them at any time, and free the same from trust. The evidence that the same is so freed from trust shall be the written deed of said W. P. Harvey filed and recorded as other deeds both as to the realty and the personality so freed from trust. I also empower said W. P. Harvey to appoint his successor as trustee, but the freeing said property from trust is a power lodged only in said Harvey as trustee." By a deed

executed on March 11, 1898, Dr. Harvey as trustee conveyed to Mrs. Loving in fee simple and free of the trust both the realty and personalty devised to her in the will; and on March 16, 1898, he executed a similar deed to Frank Wayne Harvey. The deeds set out the provisions of the will, and in each the granting clause is as follows: "Now in consideration of the above the party of the first part sells, aliens and conveys and likewise frees and relieves from every character of trust, both as to the realty and personalty and invests the party of the second part with a fee simple title to the following estate (here follows description of land in controversy)." The question is raised that at least the dying without issue as provided in the will must be limited to the continuance of the trust, and that these deeds invested the grantees with the absolute fee. That this was the intent of the deeds is evident, but when Mrs. Loving died she left a will devising her part of the estate to her husband. There was a contest over her will, and in the settlement of this contest it was agreed on March 17, 1899, that the personalty should go to her husband, the contract being based on the following recitals:

"Whereas Mrs. Lilah Harvey Loving, late wife of the undersigned J. W. Loving, departed this life February 14th, 1899, residing at Campbellsville, Taylor county, Kentucky, leaving a last will, which is not yet probated, in which the undersigned J. W. Loving is the principal devisee, she dying without issue and appointing said Loving her executor without bond, and whereas under the will of her grandfather, William Payne, none of the real estate mentioned in said will passed to her only for and during her life, but only personalty owned by her at her death; and whereas the said Loving and the undersigned W. P. Harvey the father of the said deceased, Frank W. Harvey, and W. Conn Bell,

Jr., represented by his father, W. C. Bell, are the only persons interested in the distribution of her estate," etc. The trustee had only such power as the will conferred on him, and his deeds are inoperative in so far as they are not authorized by the will. The construction placed by the parties on the will is not conclusive, for the proper construction of the instrument is a question of law for the court. We must therefore determine whether the testator contemplated that the termination of the trust under the eighth clause should defeat the limitation under the ninth clause as to the real estate. The case of Jones v. Moore, 96 Ky., 274, 16 R., 561, 28 S. W., 659, is relied on by appellants on this point. But that case is simply in line with the first and second classes of cases above cited. Part of the estate went to the widow for life, and at her death to her son, if living, and, if not, to certain collaterals. The remainder of the estate was placed in the hands of the guardian of the son, to be held for his benefit, with the provision that if he died without issue the estate should go to certain collaterals. The son was at the time an infant a few months old. As to the estate which went to the widow for life, it was held that the son, if living at her death, took it then absolutely; and as to the part of the estate placed in the hands of the guardian for the son it was held that his title became absolute when he became of age and the estate was distributed to him. The purpose of the testator in the case before us in providing that the trustee might hand over all or any part of the property to the devisees, and free the same from trust, does not seem to have been to change in any way the estate which, by the will, he vested in the devisees. He seems to have contemplated that, as the grandchildren married and settled in life, it would be proper for the trustee, if he saw fit, to turn over to them the property devised. As to

Harvey, &c., v. Bell, &c.

the personalty, if it was turned over by the trustee to the devisees, and was consumed by them, no one could complain. But in simply authorizing the trustee to free the property of the trust, the testator does not seem to have had in mind empowering him to add anything to the title which the devisees took in he real estate under the will, or to change in any way the scheme which he had devised to secure the estate to his own blood. The trustee was the father of the devisees. The testator had in mind that the father would consult the true interests of his children, and would hand over their estate to them as their real interest might require. But the father was also the heir at law of his children if they died without issue, and the testator, evidently contemplating this, undertook by his will to prevent the property devised passing under the statute of descent in case any of the devisees died without issue, and in authorizing the father to free the property of the trust which he created to carry out his purpose of preserving the estate it can not be presumed that he contemplated empowering the trustee to set at naught the settled purpose which he manifested to secure his estate to possible great-grandchildren.

We therefore conclude that the circuit court properly held that W. C. Bell, Jr., took under the will, the entire title to the real estate referred to.

Judgment affirmed.

Petition for rehearing by appellant overruled.