## Spacey, et al. v. Close, et al.

(Decided May 6, 1919.)

### Appeal from Boone Circuit Court.

1. Wills—Construction.—Where there is a devise to one for life, and then to another in remainder, and if the remainderman dies without issue or descendants, then living, then over to another; or where there is a devise to one for life, and the remainder to a class, and if one of the class dies without issue or descendants, then living, then to the survivors of the class, the provision relating to dying without issue or descendants refers to the death of the remainderman before the death of the life tenant, unless there is something in the will from which it can be gathered, that the testator intended the death of the remainderman, at any time, at which it might occur.

2. Deeds—Warranty—Estoppel.—What one expects to inherit from one who is living, if such one should die intestate and without any nearer of kin, is not a subject of sale and conveyance, and a deed thereto passes nothing, and the warranty in such a deed does not estop the grantor from claiming what he does thereafter inherit from such one.

J. M. LASSING and N. E. RIDDLE for appellants.

S W. TOLIN and G. W. TOLIN for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This appeal is from a judgment in two actions, between the same parties, the actions having been consolidated. From the judgment, there is an appeal and, also,

a cross-appeal. The decision must be rested upon the construction to be placed upon a certain clause of the will of Agnes Flournoy, and a clause of the codicil to her will. The will was executed on February 9, 1838, and the codicil, on July 18, 1840, and both were probated as her last will and testament on August 17, 1840. The clause of the will in question, so far as it is necessary to be considered, is as follows:

"Item—I give and devise to Samuel Winston, the Bellevue tract of land, in the county of Boone, and, also, the slaves, Catherine and Arthur, to be held by him in trust for the use and benefit of my brother, John Grant, for and during his natural life, and not in any manner to be subject to the control or liable to the debts of the said John Grant, and after his decease, remainder to the children of said John Grant. . . ." The clause of the codicil affecting the above provision, is as follows:

"Item 6. I hereby will and bequeath and devise in case one or more of the children of my brother, John Grant, shall die without children or their descendants living at the time of the death of such child or children of said John Grant, that then the shares of such child or children of said John Grant willed or bequeathed or devised to such child or children of said John Grant or to *the* benefit, shall go to the other surviving child or children of said John Grant or their descendants, and be owned possessed by him or them."

There can be no doubt, that under the terms of the clause quoted from the original will, that John Grant was devised a life estate in the lands, and that each of his children upon the death of the testatrix, took a vested remainder, which became a perfect fee upon the death of the life tenant. The clause in the original will, and the one with reference to the devise in the codicil, must be construed together, and from the terms of both, aided by any light, which may be thrown upon their meaning by the other clauses of the will and codicil, the intentions of the testatrix must be ascertained and determined. It is contended upon one hand, that the children of John Grant took a perfect fee in the lands upon his death; while upon the other hand, it is contended, that under the terms of the will and codicil, each of the children of John Grant at his death, took a defeasible fee in an equal moiety of the land, subject to be defeated by the death of

such child, at any time, without children then living, and as a result of such construction, each of the children of John Grant was the owner of a contingent remainder in the share of each other child, and which would vest and become a fee upon the death of such other child, without children then living, regardless of the time when such child should die. So, the question for determination is, at what time will the death of one of the children of John Grant, childless, have the effect of passing the interest of such child in the land, under the will, to the surviving children of John Grant, or their descendants? It will be observed, that the clause of the codicil does not, in express terms, fix the time, when the death of a remainderman, childless, will have the effect of passing his remainder interest to his surviving brothers and sisters. The only effect, which the codicil has upon the interests devised to the remaindermen by the original will, is to provide for a defeasance of the vested remainder of any one of them, who should die, childless, at the time of his or her death, and in such event, the interest of such one is devised over to the surviving remaindermen or their descendants. The various clauses of the will and codicil show, that the testatrix was acquainted and discriminated between estates in fee, and those of less extent, but, there is nothing, which indicates, that the testatrix intended to bestow upon each of the remaindermen, at the commencing of the period of enjoyment, an estate less than a perfect fee, or that she intended to burden the estate of either, with a defeasance, which might be effective until the termination of their lives. It would seem from the particularity, with which the survivorship clause in the codicil is written, that if the testatrix should have intended that the death of one of the remaindermen, at any time, should have the effect of defeating the estate devised to him or her, it would have been so declared. The testatrix must have contemplated, that the remaindermen would come into the enjoyment of the estate, intended for them, upon the death of the life tenant, and such condition is expressly provided for by the clause in the will, and there is nothing about the clause of the codicil, which would indicate that she had changed her mind upon that subject, or intended anything to the contrary. Intending that the land should be the property of John Grant's children, when he should die and the period for the enjoyment of it by them should commence at his

death, the codicil was intended to safeguard its ownership and enjoyment by them, against any portion of it becoming the property of any other than his children, by the death or disposition of his interest by one, or more, before the period for the enjoyment of the property should commence, but, there is nothing to indicate, that she intended, by the codicil, to give to the remaindermen, surviving at the period of enjoyment, any less estate, than was given to them under the original will. While in construing a will, the primary and governing principle is that the intention of the testator, unless the intention is contrary to law, must always govern, and all mere rules of construction must give way to the plain intention of the testator, as expressed, in the will, there are rules of construction, which the courts have adopted, in aid of the ascertainment of the intentions of the testator, and one of them is, that where an estate is given to one, for life, with remainder to another, and if the remainderman die without issue or children, then to a third person; or where the devise is to one for life, with remainder to a class, and in the event of the death of one or more of the class, without issue or without children, then to the survivors of that class, the provision regarding the death of the remaindermen without issue or without children means the death of the remainderman before the termination of the particular estate, unless the letter or context of the will shows, that the testator intended a death, at any time, at which it might occur. Birney v. Richardson, 5 Dana 424; Ferguson v. Thomas, 87 Ky. 510; Pool v. Benning, 9 B. M. 623; Thackston v. Watson, 84 Ky. 206; Hughes v. Hughes, 12 B. M. 115; Wren v. Hyne's Admr., 2 Met. 129; Wilson v. Bryan, 90 Ky. 482; Cornwall v. Falls City Bank, 92 Ky. 381; Pruitt v. Holland. 92 Ky. 641; Jewell v. White, 166 Ky. 325; White v. White, 169 Ky. 752; Harvey v. Bell, 118 Ky. 521; Cassity v. Riley, 158 Ky. 507; Bradshaw v. Butler, 33 K. L. R. 531; Moore v. Sleet, 113 Ky. 600; Mercantile Bank v. Ballard, 83 Ky. 481; Dickinson v. Ogden, 89 Ky. 162; Lewis v. Shopshire, 68 S. W. 426; Baxger v. Isaacs, 71 S. W. 907; Anderson v. Herring, 154 Ky. 289; Reuling's Extrx. v. Reuling, 137 Ky. 637; Hughes v. Covington, 152 Ky. 421; Trabue v. Terry. 9 S. W. 161; Jones v. Moore, 96 Ky. 273; Kephart v. Hieatt, 25 R. 1602; Duncan v. Kennedy, 9 Bush 580; Webster v. Webster, 93 Ky. 632; Henry v. Carr, 157 Ky. 552.

Applying this rule of construction, which is generally adhered to, as expressing the will of the testator, under such conditions, each of the children of John Grant, after the death of the testatrix, had a defeasible fee in remainder in an equal moiety of the land, subject to be defeated by the death of the remainderman without children or descendants living, at the termination of the particular estate, and each of the children had a contingent interest in the portion of the others, until the termination of the life estate but, at the termination of the life estate of John Grant, the interest of each of his children, then living, ripened into a perfect fee, and each of them could sell and convey, or pass his interest by will, and if one should die intestate, his interest passed to his heirs, in accordance with the laws of descent. The will of Agnes Flournoy had no further influence upon the devolution of the property. Neither of the children, then living, had any further contingent interest, or any kind of an interest, in the portion owned by another. After the death of John Grant, in the year, 1849, the lands were divided, and a portion allotted to each of his children, in severalty. After some years, Ann Grant Aiken, one of the children of John Grant, died, childless and intestate, and the portion, allotted to her, passed to her heirs. She left no children, or descendants, and hence, her brother and sisters, and the children of a deceased sister, were her heirs. Her heirs sold and conveyed the land, owned by Ann Grant Aiken, at her death, and, by the same deeds, conveyed to the grantee, all the interests, which thereafter should come to them, under the will of Agnes Flournoy, in the lands held by John Grant during his lifetime, on account of the death of any other of the children of John Grant, who might thereafter die without children, or without issue then living. The deeds did not purport to convey any present interests in the lands other than the grantor's interest in the land allotted to Ann Grant Aiken, deceased, nor did the deeds undertake to specify or describe any definite boundary or undivided interest, or to describe the interests which were intended to pass by the deeds, but, they limited the interests conveyed to such as might thereafter be received by the grantors under the will, and, also, the interests, that the children of the grantors should be entitled to, under the will of Agnes Flournoy,

in the event, that any one of the children of John Grant should die childless. As the grantors had no interest, either vested or contingent, in any of the lands allotted to any of the children of John Grant, other than the portions allotted to themselves, by virtue of the will, nothing passed by these deeds, except the lands allotted to Ann Grant Aiken. The thing, attempted to be conveyed by the deeds, other than the lands, inherited from Ann Grant Aiken, did not, nor ever can have any existence. A well established principle is, that one, contracting to convey, must have a vested or contingent interest in the subject matter of the conveyance. In the present instance, the grantors had neither a vested nor contingent interest, in the lands of W. W. Grant, or Elizabeth Grant Rice, two of the children of John Grant, and the lands, allotted to whom, are now, in controversy. One who sells and conveys an estate with warranty of title, is, in most cases, estopped by reason of his warranty, or the nature of the conveyance, from asserting title to the property conveyed, and from denying the title of his grantee, and as a general rule, when one sells an estate to which he has no title, but warrants the title, any title, acquired by him thereafter, inures to the benefit of his grantee, but the instance, in which an heir makes and conveys an estate, which he expects to inherit from an owner then living, is said to be an exception to the rule, upon the ground, that the thing attempted to be sold, has no potential existence, is not the subject of sale and conveyance, and is a fraud upon the owner of the estate, and against public policy, and that a deed, evidencing such a sale, is void, including the warranty. The interests, claimed by the Tupman heirs and heirs of Susan Grant Bush, in the lands owned by Elizabeth Grant Rice, deceased, did not come to them, by virtue of the will of Agnes Flournoy, and the warranty in the Tupman's deeds, only relates to interests which they might receive, by devise under that will, and the heirs of Susan Bush have not executed any deeds, and they inherited their interests in the lands, directly from Elizabeth Grant Rice. The only thing, which W. W. Grant or the Tupmans had, relating to the lands of Elizabeth Grant Rice at the dates of their conveyances, was a mere expectation, that, in the event, Elizabeth Grant Rice died, childless, and the owner of the land, and had not disposed of same by will, they

would inherit an interest in it. Such expectancy, as above stated, was not a subject of sale or conveyance, and the warranty, in a deed attempting such conveyance, does not estop the claim to the interests thereafter inherited. McDowell v. Neal, 12 Ky. Opin. 293; Lowry v. Speer, 7 Bush 453; Wheeler v. Wheeler, 2 Met. 474; Beard v. Griggs, 1 J. J. M. 22; Smith v. Dinguid, 8 R. 64; Furnish's Admr. v. Lilly, 84 S. W. 734. W. W. Grant disposed of his portion of the lands, by will, which he was authorized to do.

The opinion of the court being in accordance with the views herein expressed, it is therefore affirmed.