## Guthrie, et al. v. Guthrie's Executor, et al.

(Decided March 3, 1916.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. **Wills—Construction.**—Where some of the devisees of a will were given only fifty dollars and others as much as $2,500.00, a provision that "Should there be a deficit in the amount given, each heir shall be reduced in amount equally," means that each devisee or legatee should be reduced proportionately in case of a deficit, since to reduce each heir equally in amount, would in case of any appreciable deficit, be likely to consume the smaller bequests.

2. **Wills—Construction.**—Where a will provides that "Should there be a deficit in the amount given, each heir shall be reduced in amount equally, and if there should be a surplus in my estate, I wish the heirs named to share in the proportion as given in this will," the expression "heirs named" should be regarded as having been used with the same meaning in regard to a possible surplus as the words "each heir" as used in relation to a possible deficit, and refers to and includes any of the heirs named in the will and codicils, since in this jurisdiction the will and codicils are to be considered and construed as an entirety.

3. **Wills—Extent of Testamentary Power.**—Where a legatee was in the original will given $1,500.00 and in a codicil this was changed to a life annuity of fifty dollars, he is not entitled to share in the surplus estate of the testator, under a provision of the will that "I wish the heirs named to share (in the surplus) in the

proportion as given in this will," as by the change to an annuity it was intended to fix his bequest at that amount per year, regardless of either a deficit or surplus in the estate.

ARTHUR M. RUTLEDGE and STROTHER & HAMILTON for appellants.

McDERMOTT & RAY, BRUCE & BULLITT and HELM BRUCE for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming in part and reversing in part.

James Guthrie, a bachelor eighty-four years of age, died testate at Prescott, Arkansas, August 16, 1913, at the home of the family of his deceased nephew, Dr. Adam Guthrie, Jr., son of his brother, Adam Guthrie. Notwithstanding his stay of a year and a half with the family of his deceased nephew, it was not questioned that the testator's legal residence had remained and was in Jefferson county, Kentucky, consequently his will, together with its three codicils, was duly admitted to probate by the county court of that county and the Fidelity and Columbia Trust Company, of the city of Louisville, successor to the Fidelity & Safety Vault Company, named in the will as executor, was by a further order of the same court appointed and permitted to qualify as the executor thereof. The original will and three codicils are in words and figures as follows:

"Louisville, Ky., April 10, A. D. 1899.

"I, James Guthrie, of the county of Jack and State of Texas, now being in Kentucky temporarily knowing the uncertainty of life and the certainty of death, and desiring to dispose of my property real and personal, make the following will:

"At this time my estate consists of ten shares of bank stock of the Merchants' & Farmers' Bank of Weatherford, Texas; twelve shares of the Beckham Nat. Bank of Graham, Texas, and a judgment in the Jack Co. district court against Walter Mop and his father for eight hundred and eighty dollars and some promissory notes with which my nephew, J. H. Guthrie, of Jack Co., Texas, has knowledge and some gas stock, four shares in Louisville, Ky. Also the following real estate: Three lots in the town of Middlesborough, Bell Co., Ky. Several lots in the town of Graham, Texas,

and several lots in the town of Wichita Falls, Wichita Co., Texas. Also fifty acres of cedar land and an undivided half interest in two hundred and ten acres of cedar land adjoining the fifty acres all in Young Co., Texas, about fourteen miles southeast of the town of Graham, Young Co., Texas. Said land is on the Brazsos River. Also three tracts of 160 acres each (480) about four miles north of my ranch in Jack Co., Texas. Also 320 acres of land at the mouth of Dillingham Creek about one and a half miles west of my ranch. Also one tract of 300 acres being a part of Colony Survey No. 847 and south of J. H. Guthrie's land and my ranch or tract of land twelve hundred and eighty acres of land (1,280).

"It is my wish to bequeath my estate as follows:

"1st. I will and bequeath to my half sister, Julia F. Glasscock, the sum of fifteen hundred dollars, and the like amount to my half brother, William P. Fore, both of Trimble Co., Ky., if the said William and Julia are living at the time of my death, and I desire to give to Julia and Harry Penn, children of my deceased sister Lucy, the sum of twenty-five dollars each.

"2nd. I will and bequeath fifteen hundred dollars to each of my nephews and nieces, children of my deceased brother, John B. Guthrie, who formerly lived in Nelson Co., Ky. They are Sue Crume, now of Wichita, Kansas; James P. Guthrie, Jack H. Guthrie, John B. Guthrie, Mary L. Bryant, Kaye F. Guthrie and Nannie W. Guthrie.

"3rd. To my nephew, Dr. Adam Guthrie, Jr., now of Quitman, Arkansas, son of my brother, Dr. Adam Guthrie, the sum of fifty dollars; as he is by deed of trust entitled to one-half of the amount held by the Fidelity Trust & Safety Vault Co. for me for life, I do not give more. Should there be a deficit in the amount given, each heir shall be reduced in amount equally, and if there should be a surplus in my estate, I wish the heirs named to share in the proportion as given in this will. If any of the beneficiaries of this will should die without children, I wish the parties named in this well to *heir* their portion as given in will pro rata.

"I hereby appoint the Fidelity Trust & Safety Vault Co., of Louisville, Ky., executor of this, my will, and authorize it to make partition of my lands and lots and

make deeds therefor in partition and direct it to hold
the shares of James P. Guthrie and John B. Guthrie in
trust—also the shares of W. P. Fore and Julia Glasscock.

"JAMES GUTHRIE.

"Witness:
"Arthur J. Barkhouse.
"Wm. D. Wakefield."

"Louisville, Ky., June 13, 1906.

"I desire to add this paper to my will made about
the 10th of April, 1899. I desire that my name-sake,
James Guthrie, son of my nephew, Jno. B. Guthrie, now
residing near Anchorage, Jefferson Co., Ky., shall have
twenty-five hundred dollars to be applied to his educa-
tion, and if any of the amount so given is left over the
same to be turned over to him when he shall be twenty-
four years of age. Should my nephew, James Guthrie,
die without children, the amount remaining to be given
to his brothers and sisters.

"I desire that my nephew, Adam Guthrie, now resid-
ing in Prescott, Arkansas, be given twenty-four hundred
and fifty dollars as trustee of his children to be applied
to their education; if not so used, to be given them when
they shall be twenty-one. The judgment against Walter
Mop and his father has been settled.

"I desire to change the bequest of fifteen hundred
dollars given to Will P. Fore in my will and instead
that he shall have fifty dollars annually till his death.
I have bought twenty acres of land, making the No. 847
T. E. L. tract south of the Graham & Mineral Well road
320 acres.

"JAMES GUTHRIE."

"As codicil to my will of date of April 10, 1899, I
direct that the share of my niece, Sue Crume, wife of
A. C. Crume, at present of Elkton, Kentucky, shall be
held in trust for her by my executor, the Fidelity Trust
Company, of Louisville, Kentucky, and the income only
be paid to her in fee.

"I authorize the Fidelity Trust Company, executor
of this, my will, to sell and by proper deed convey to the
purchaser any real estate I may own at my death and to

sell and transfer any personalty that may be necessary in making settlement of my estate of which necessity it shall be the judge.

"Witness my hand this 17th day of July, 1907.

"JAMES GUTHRIE.

"Witness:

"John Stites.
"H. H. Heaton."

"As a codicil to my will of date April 10, 1899, I devise to my nephew, Dr. Adam Guthrie, of Prescott, Arkansas, one full undivided seventh (1/7) part of all real estate I may own at my death in the State of Oklahoma.

"Witness my hand at Louisville, Kentucky, this 16th day of September, 1909.

"JAMES GUTHRIE.

"Witness:

"John Stites.
"H. H. Heaton."

As, between the date of the writing of the original will, April 10, 1899, and his death, the testator's estate largely increased in value, thereby creating a very considerable surplus over and above the amount required to satisfy all the devises and bequests specified in the will and codicils, the proper construction of that part of clause 3 of the original will, which provides for the disposition of any "surplus" of the testator's estate, became, in the estimation both of the executor and devisees, a matter of great importance; hence the executor instituted this action, all of the devisees being made parties, to obtain a construction of the will, particularly the clause just mentioned.

It was contended in the court below and is now insisted by the devisees or legatees named in the codicils, that they are entitled to participate in the surplus of the testator's estate, in the proportion that the amounts given them by the codicils bear to the total amount given; whereas, it was and is the contention of the devisees named in the original will that its terms provide that the surplus is to be distributed among them, the devisees named in the original will, and that no part of it goes to the devisees named in the codicils. The judgment of the circuit court adopted the construction of

the will contended for by the devisees named in the original will, and from that judgment the devisees named in the codicils have appealed.

It will be observed that by the first clause of the original will $1,500.00 is bequeathed Julia F. Glasscock, the testator's half sister, and a like amount to William P. Fore, his half brother, in the event they survived him; but by a provision of the first codicil the bequest of $1,500.00 to William P. Fore was annulled and in lieu thereof he was given "fifty dollars annually till his death." The first clause of the original will also contains unconditional bequests of $25.00 each to the testator's niece, Julia Penn, and nephew, Harry Penn, children of his deceased sister Lucy.

By the second clause of the original will the testator's seven nieces and nephews, children of his deceased brother, John B. Guthrie, were given $1,500.00 each, amounting in the aggregate to $10,500.00. By the third clause of the original will, his nephew, Dr. Adam Guthrie, Jr., with whose family he resided at the time of his death, was given $50.00, with the explanation that more was not given this nephew because he was entitled to one-half of a certain amount or fund held in trust by the Fidelity Trust & Safety Vault Company.

By the first codicil to his will, executed by the testator June 13, 1906, it was the object of the testator, in addition to revoking the bequest of $1,500.00 made in the original will to William P. Fore and giving him in lieu thereof an annuity of fifty dollars until his death, to provide for the education of his namesake, James Guthrie, son of his nephew, John B. Guthrie, by giving him $2,500.00 for that purpose, with the proviso that "if any of the amount so given is left over, the same to be turned over to him when he shall be twenty-four years of age," but if he should die before reaching that age without children, such amount of the $2,500.00 as may not have been applied to his education should be given to his brothers and sisters; and also to give $2,500.00 to Adam Guthrie, of Prescott, Arkansas, as trustee of his children, to be applied to their education; *but if not so used, to be given them when they should be twenty-one.*"

The second codicil, executed July 17, 1907, makes no additional devise or bequest of the testator's estate, but merely appoints the Fidelity Trust Company executor of the will, empowers it to sell the testator's real and

personal estate and make deeds conveying the real estate; and makes it trustee for the testator's niece, Sue Crume, with direction to hold in trust for her the estate given her by the will of the testator, "the income only to be paid her in fee." By the third and last codicil, executed September 16, 1909, the testator devised to his nephew, Dr. Adam Guthrie, of Prescott, Arkansas, an undivided one-seventh of all real estate in Oklahoma owned by the testator at the time of his death.

While, as previously stated, it was developed after the death of the testator that the estate left by him was worth greatly more than enough to pay the devises and legacies made, it is apparent from the contents of the will that at the time of writing the original will the testator's mind was in uncertainty as to what his estate then or at his death would amount to. In other words, he did not then know whether there would be a surplus or a deficit. So, to meet the uncertainty which existed at the time the original will was executed, he put in the third clause of the will, immediately following the bequest of fifty dollars to his nephew, Dr. Adam Guthrie, the following provision:

"Should there be a deficit in the amount given, each heir shall be reduced in amount equally and, if there should be a surplus in my estate I wish the heirs named to share in the proportion given in this will."

In construing a will it should be the object of the court to ascertain the true meaning and intent of the testator as expressed therein. Therefore all rules of construction must be applied with this one purpose, and the question here to be determined is, whether the testator intended that the devisees and legatees mentioned in the codicils should have any share in the surplus or residuary estate, or whether the same should be distributed only among those whose names are mentioned in the original will. It is manifest from a reading of the will and codicils, that there is nothing in either or any of them which, in words, expressly excludes the devisees or legatees named in the codicils from participating in the surplus estate. The absence of such a provision is not without significance, inasmuch as the testator, had he been so inclined, could by apt words readily have provided that these legatees should be excluded from any share in the surplus estate. As this was not done, their exclusion, if intended, is a matter

of implication, or inference, and must be arrived at from something expressed, or failed to be expressed, either in the will or one or more of the codicils, or in the will and codicils as a whole.

We fail to find in the will or codicils any expression that can fairly be said to support the construction contended for by appellees. The first half of the provision of the third clause of the original will in question, in declaring that "should there be a deficit in the amount given, each heir shall be reduced in amount equally," means that each devisee or legatee should be reduced proportionately. If this were not the testator's meaning, the occurrence of a deficit would compel the Penn children, who were given only $25.00 each, to submit to the same reduction as those to whom much larger amounts had been given, which, obviously, was not intended. There is in the third clause of the will no such statement as that "each of said heirs" or "each heir above named," or "each heir herein named," shall be reduced, etc. On the contrary, the statement is, "Should there be a deficit in the amount given, *each heir shall be reduced in amount equally,*" and "if there should be a surplus in my estate, I wish the heirs named (i. e., who would have been subjected to a reduction had there been a deficit) to share in the proportion as given in this will," thereby meaning to apply the reduction that might result from a deficit or the surplus that might result from an increase, in the estate, proportionately to each beneficiary of the testator's bounty—except William P. Fore—named in the will, whether in that part of it first executed, or such parts as were subsequently added to it, by way of codicils. For manifest reasons, contained in the first codicil and adverted to later in the opinion, William P. Fore's legacy could not have been subjected to the reduction, had there been a deficit, nor can he be permitted to share in the surplus.

Had it turned out that the testator's estate was insufficient in amount to satisfy all the legacies made by the original will and codicils, can it be doubted that the legatees named in the original will could rightfully have demanded that those made legatees by the codicils, be required to submit to such a reduction of their legacies as would have made them bear their proportionate part of the loss resulting from the deficit? Obviously, this question must be answered in the negative. The legacy

of $2,500.00 to James Guthrie for his education and that of $2,450.00 to Adam Guthrie, in trust for the education of his children, made by the first codicil could not, as now claimed by appellee, have escaped the reduction. Neither legacy is a specific bequest, entitling it to preferential payment at the hands of the executor. A bequest of a sum of money without designating the fund out of which it is to be paid, is but a general legacy. 40 Cyc., 1869, 1870, 1873. Moreover, although it is stated in the codicil that the sum of $2,500.00 bequeathed James Guthrie was "to be applied to his education," such application of it was not made compulsory. It was left to his discretion to determine how much, if any, of it, should be so applied. The codicil is positive only in its direction that such part of the amount bequeathed as might not be applied to his education, though it be the whole of it, should be turned over to him upon his becoming twenty-four years of age. It is likewise true that the bequest of $2,450.00 to Adam Guthrie for the education of his children, made by the same codicil, leaves it to his discretion as trustee to use or not use it for that purpose, and provides that "if not so used to be given them (the children) when they shall be twenty-one."

Had the testator's niece, Sue Crume, not been named in the original will as a legatee, there is nothing in the second codicil that would have relieved her from bearing her proportionate part of such loss as might have resulted from the deficit contemplated by the third clause of the original will. The codicil does not change the amount of the bequest of $1,500.00 made her by the second clause of the original will, but merely provides that it shall be held in trust by the executor and only the income therefrom paid her. Had there been a deficit, such proportion of the consequent loss as would have resulted to Sue Crume would have correspondingly reduced her legacy, without regard to whether the bequest of the legacy was made by the original will or codicil.

What has been said respecting the bequests contained in the first and second codicils applies to the additional devise or bequest made Dr. Adam Guthrie by the third codicil. In view of the authority given the executor by the second codicil to sell and convey the testator's real estate, it is evident that the latter contemplated the sale of the Oklahoma land, an undivided one-seventh of which

was devised Dr. Adam Guthrie by the third codicil; therefore, there would be no difficulty in ascertaining the liquidated value of this devise and, on the basis of such value, determining what would have been the proportionate part of the loss Dr. Guthrie would have suffered had there been a deficit in the estate, or, as there was no deficit, what proportion of the surplus or residuary estate he will be entitled to receive. This being so, it would seem that his right to participate in the surplus cannot be questioned, even under the contention made by appellees, there being nothing in the gift itself to negative his right to such participation.

If the legatees named in the codicils could have been compelled to share with those named in the original will in the loss, had the testator's estate been insufficient to pay all devises or legacies in full, it necessarily follows that they must be allowed to share in the surplus. This conclusion is inevitable from the language of the third clause of the original will, for immediately following and connected with what is therein said respecting the deficit, are these words, defining the rights of the several legatees in the event a surplus is ascertained to exist: "If there should be a surplus in my estate I wish the heirs named to share in the proportion as given in this will." Fairly construed, the words "heirs named," as used in the above clause in dealing with the possible surplus, should be regarded as having been used with the same meaning intended by the words "each heir" as used in relation to a possible deficit. In other words, the expression "heirs named" logically refers to and includes any of the heirs named in the will and codicils and cannot properly be construed to confine the testator's meaning to such only as had been previously mentioned in the original will.

Under the well-known rule obtaining in this jurisdiction, the original will and codicils are to be considered and construed as an entirety, that is, as though the codicils themselves were one with the original will. If the provisions of any of the codicils conflict with or are repugnant to the provisions of the original will, the rules of construction require that the provisions of the instrument last executed, the codicil or codicils, shall prevail, but the provisions of each should, as far as practicable, be given such effect as the testator intended them to have. It will be observed that each of the three codicils

here refers specifically to the original will, even mentioning in each instance the date of the original will. Thus, the codicil of June 13, 1906, begins with the statement, "I desire to add this paper to my will, made tenth of April, 1899." The second codicil, of date July 17, 1907, begins with the statement, "As codicil to my will of date April 10, 1899, I direct, etc." That of September 16, 1909, also begins with the words, "As a codicil to my will of date April 10, 1899, I devise, etc." All which shows that the testator, in executing each of the codicils, had constantly in mind the contents of the original will, and though only the first and third codicils add new bequests, each of the three makes some change in the provisions of the original instrument, thereby demonstrating that the testator, in adding each codicil, had at the time a full comprehension of what he was then doing as well as what he had previously done.

Approval of the rule of construction referred to is thus given in 40 Cyc., 1420: "A will and codicil must be read together as one instrument, and so far as practicable must be reconciled and recognized together as one consistent whole."

In Redfield on Wills, vol. 1, 432-33, 434-35, it is said: "The intention of the testator as expressed in the will and as gathered from a legal construction of the whole will, including the codicil, and not from outside conjecture or ordinary intelligence is to govern."

In a footnote following the above statement of the law quoted from Cyc., is cited the case of Beal v. Cunningham, 3 B. Mon., 390, in which it is said:

"And hence it has been well established that a codicil executed with the solemnities required by the statute for passing lands, is a republication of the will, and both taken together make but one will."

In Armstrong v. Armstrong, 14 B. Mon., 333, it was held that "a codicil is in legal effect a republication of a will and the whole is to be construed together as if the will had been executed at the date of the codicil." In Davis v. Taul, etc., 6 Dana, 51, it appears that by the testator's original will he devised a certain farm to his son, William Davis, and his heirs forever, William being appointed the executor of the will. William's death occurred before that of his father and he left a widow and several children. Following William's death the testator, by a codicil added to his will, setting forth Wil-

liam's death, appointed another son of the testator executor "to the above mentioned will." The action followed the father's death and was brought by A. T. Taul and wife—the latter being one of the residuary devisees named in the will—for a partition of the land devised to William Davis, on the ground that the devise had lapsed by his death before that of the testator, and the heirs of William Davis and all other heirs of John Davis, the testator, were made defendants. On the hearing the circuit court decreed a partition as prayed, excluding therefrom those of the testator's sons who had received, as stated in the will, their portions by previous advancements, and assigning to the heirs of William Davis collectively only the share of one heir of the testator. In reversing the judgment this court held that the devise did not lapse by the intermediate death of William, intended to be the first taker, but should be treated as a devise to his heirs. In the opinion it is in part said:

"The question then is, what is the intention of the testator, and has he so manifested that intention as that it may be carried into effect? And this question is to be determined by the language and circumstances apparent on the face of the will. Applying these principles to the present case, it is manifest that, if the will had stood without the codicil, the devise to William Davis must have lapsed, because there was nothing in the will to show the intention that his heirs should take otherwise than by descent from him. But the codicil was a republication of the will, and the whole is to be construed together, as if the will had then been written and executed. And the devise in question is to be taken as if it had contained a recital of the death of William and had then given to him and his heirs the tract of land mentioned.  *  *  *"

In Urey's Admr. v. Urey's Exr., etc., 86 Ky., 355, a testator by his will, after making certain special devises to his collateral kindred, provided: "I clearly will and declare that my wife shall have all my property to do with as she pleased, as this is only intended in case we should die while gone," he and his wife being about to start on a journey. The will named the wife as executrix and gave her power to destroy the will if she should choose to do so. After the return of the testator he added a codicil to his will, making additional devises and making changes in the devises made by the original

will. This codicil, by its language, was declared to be a part and parcel of the testator's will. The wife of the testator survived him. In an action brought by the widow for a construction of the will we held: First, that if the first paper executed by the testator was invalidated by the return of himself and wife, it was republished by the codicil subsequently added, and the two were to be construed together as one will; second, that it was the intention of the testator that the special devises made by the will and codicil should take effect only in the event his wife did not survive him, and that she should have the entire estate absolutely in the event she did survive him, and that the intention of the testator, as gathered from the whole will, must govern. In the opinion (Judge Pryor writing for the court) it is said:

"The will was admitted to probate by a court having jurisdiction of the subject-matter, in the county of the testator's residence, in the mode provided by the statute, and if all the devises made in the paper of the twenty-ninth of March, 1850, were purely contingent and defeated by the non-happening of the event upon which the devises were to take effect, still the codicil written on the same paper of April 10, 1860, is 'declared to be a part of the within will,' and the paper as first executed, referred to by the codicil, is but a continuation of the devises made or intended to be made by the testator. The entire paper dated first in March, 1859, and that dated in April, 1860, is the true will of the testator, and both admitted to probate as required by the statute. So the contingent devises were made absolute by the codicil that was executed after the testator and his wife returned from their trip east. A new will was in effect then made, and the provisions of the first writing changed in several respects. The provisions of a will may be wholly contingent, and the devise defeated by reason of the non-happening of the event, or never become effectual in contemplation of law; and such was the devises made in the reported cases of Maxwell v. Maxwell, 3 Met., 109, and Dougherty v. Dougherty, 4 Met., 25. In the case of Beal v. Cunningham, 3 B. Mon., 390, it was held that a codicil properly executed and attached. to or referring to a paper that had never been properly signed or attested as a will, would give effect to the entire paper as one will. It is plain, therefore, that the

paper dated in April, 1860, made the original paper a part of it, and the two together constituted the will of the testator, conceding that the devises first made were all contingent.  *  *  *  In this will there is an absolute devise to the wife of all the estate, and special legacies given to collateral kindred, in the first instrument, made to depend on the wife dying before the testator. Of this there can be no doubt; but after this instrument is prepared, the testator, keeping in mind the fact that he had already given to his wife the absolute estate, and provided for his collateral kindred in the event she could not take, he then proceeds to add to his will and to *further will* certain legacies to other collateral kindred, meaning, when looking to the entire instrument, that they were to take in the same manner as his collateral kindred already provided for.''

In Hanna v. Prewitt, 153 Ky., 310, a more recent case than any of those cited, we in part said:

''It is elementary law in the construction of wills that the whole will, including all codicils, which are to be treated as a part of the will, should be considered in arriving at its meaning.  *  *  *.'' Alexander v. Waller, 6 Bush, 330; Sharp, etc. v. Wallace, etc., 83 Ky., 584; Deppen's Trustee, etc. v. Deppen, 132 Ky., 755.

It is evident that the circuit court failed to apply in this case the rule of construction announced by the foregoing authorities. The three codicils should have been read into the first instrument as if originally written and embodied therein as a part thereof, which, if done, would make the expression ''heirs named,'' contained in the original will, include all beneficiaries named in the will and codicils, and enable all of them, except William P. Fore, to share proportionately in the testator's surplus or residuary estate.

We are convinced that it was not the intention of the testator that his half brother, William P. Fore, named as a legatee both in the original will and first codicil, should bear any part of the loss that would have resulted to the beneficiaries of the testator's bounty, had there been a deficit in the estate, or that he should receive any share of the surplus ascertained to exist after discharging all the legacies made by the will and codicils. Fore was given $1,500.00 by the original will, but by the third clause of the first codicil this bequest was changed to a life annuity of fifty dollars. The provision

of the clause, *supra,* is as follows: "I desire to change the bequest of fifteen hundred dollars to fifty dollars annually till his death." Manifestly, this provision operates as a complete revocation of the bequest of $1,500.00 contained in the original will and constitutes a legacy of a life annuity of fifty dollars to him. "An annuity is a fixed sum to be paid the beneficiary annually, and is distinguished from a gift of income by the fact that an annuity may be paid out of the principal where necessary." 40 Cyc., 1631; Gillespie v. Boisseau, 23 R., 1046.

It will be observed that the provision in question does not set apart or require to be invested a specified sum, the interest of which shall be used to pay the annuity, nor does it provide a principal sum out of which it is to be paid. We must, therefore, assume that the testator intended the annuity to be a charge upon his entire estate which must be paid as long as the beneficiary may live, and the executor may and should, out of the estate in his hands, set apart and invest a sufficient amount to provide and continue the annuity during the life of the beneficiary. In thus giving Fore a fixed and certain sum as an annuity to continue during the remainder of his life, it is patent that the testator could not have intended that this annuity should be decreased by a deficit in the estate or increased by any surplus thereof; consequently, he was not intended to be embraced among the "heirs named" either in the original will or any codicil, whose legacies were required to be reduced in amount in case of a deficit or increased by any surplus "in the proportion as given in this will," or to any extent. The provisions of the original will, referred to, do not readily or reasonably adjust themselves to a provision for an annuity. In other words, while the apportionment of a surplus or residuum among the other legatees, whether made so by the original will or codicils, on the basis of the specific sums bequeathed them, is easy, the determination of what share of the surplus William P. Fore should take under his bequest of an annuity would be attended by such difficulties, if indeed it could be done at all, as indicates that the testator did not intend that the annuity bequeathed him should be taken into account in making such an apportionment. For the foregoing reasons we concur in the conclusion of the circuit court that it was not the intention of the testator that Fore should participate in

the surplus or residiuum. Therefore, participation therein should be confined to the other legatees or beneficiaries named in the will and codicils.

Having by what has thus far been said correctly, as we believe, arrived at the intention of the testator with respect to all the beneficiaries named in the original instrument and codicils, as a whole constituting the will, we are not concerned about the supposed inequalities appellee's counsel claim will result in the disposition of his estate from our construction of the will. However, the inequalities are not as great as argued, but if they were, that fact would not justify a construction of the will that would do violence to the testator's intention as expressed therein. The disposition of his estate was a matter for him to decide and his right to distribute it among his kindred, in whatever proportions he desired, cannot be questioned or interfered with.

The authorities relied on in the oral argument and brief of appellee's counsel sustain the rule of construction adhered to by the courts of England, New York, Pennsylvania, South Carolina and perhaps other jurisdictions, but are in conflict with the adjudicated cases in this jurisdiction. In those jurisdictions a codicil is not necessarily regarded a part of the will, but, under certain limitations, is often treated as an independent instrument; hence, wills there are frequently construed to give devisees under the will rights which are not extended to devisees under a codicil, although there may be nothing in the language of the will excluding the latter. Under the rules of construction obtaining in this jurisdiction, however, the will and codicil, together, constitute the will in its entirety, and the devisees under the codicil, unless a contrary meaning is made to appear in the will or codicil, are regarded as having the same rights as devisees under the will. In some of the cases cited by counsel for appellee such expressions as "this will," or the devisees "named in this will," are construed as excluding devisees named in a codicil; whereas in this jurisdiction the rule is that such words as "this will," in the absence of language clearly indicating a contrary intention, mean the entire will, including codicils and devisees named in the codicils, as well as the original will. Our meaning is illustrated by the case of Allsop's Appeal, 9 Pa. St., 374, quoted from in the brief of appellees' counsel as follows:

"In deciding it affirmatively the auditor, whose reasoning appears to have been adopted by the orphans court, proceeded upon the ground that a codicil is now in law considered as a part of the will and, though an addition, yet forming with it but one instrument. As a consequence of this principle it is said that the whole is to be regarded as having been published at the same moment of time, and therefore the provisions and general expressions of the will proper are to be interpreted in connection with it and as inclusive of the dispositions made by the codicil."

The rule stated as having been declared by the auditor and orphans court and which the opinion proceeds to declare inapplicable in that case, is the rule in this jurisdiction. In Sloan v. Stevens, 107 N. Y., 122, another case quoted from by appellees' counsel, the doctrine announced in Allsop's Appeal, *supra,* is approved; the opinion, as shown by the following excerpt, treating the will and codicil as separate instruments:

"But while the word 'will' may, and often does cover codicils afterwards made and embrace the entire testamentary act, it nevertheless frequently and more naturally is descriptive of this part of the instrument as distinct from the other and different instrument designated as a codicil."

To the same effect are the other cases cited and quoted by appellees' counsel.

We perceive no reason for departing from the rule of construction declared in the numerous cases decided in this jurisdiction, cited in the opinion, and which seems to be supported by the leading text writers and decisions of courts of last resort in a majority of the states of this country. If right in the conclusions herein expressed, it follows that the circuit court, except as to the appellant, William P. Fore, erred in the judgment rendered. For the reasons indicated the judgment is reversed as to all the appellants except William P. Fore and affirmed as to him, and cause remanded for the entering of such a judgment as will conform to the opinion.