## Muir, et al. v. Richardson.

(Decided December 14, 1923.)

### Appeal from Jessamine Circuit Court.

1. Wills—Intention Governs, and Subordinate Rules as to Interpretation Not Applied in Absence of Ambiguity.—The cardinal rule guiding courts in the interpretation of wills is to discover the intention of the testator as expressed in the will, and subordinate and subsidiary rules of construction are called into operation

only to aid in arriving at the intention of testator when it cannot be clearly ascertained from the language employed.

2. Wills—Heir Held Not Entitled to Participate in Remainder.—Under a will giving land for life, at death "to revert back to my estate and pass equally to such of my heirs as are then living," and in a subsequent clause giving a certain heir of the testator a specified amount in cash "to be in full of his entire interest in my estate," held, that the latter heir was not entitled to participate in the remainder at death of life tenant.

3. Wills—Rule as to Words of Disinheritance Held Not Applicable.—Where remainder, after life estate, was to pass to testator's heirs, and a certain heir was devised a certain amount in cash, "to be in full of his entire interest in my estate," there was no room for the operation of the rule to the effect that words of disinheritance, not followed by a disposition of the property, will not have the effect of excluding the heir to which they are applied, the testator leaving no undevised property.

4. Wills—Rule of Interpretation as to Equalization of Heirs.—When there is doubt and the extent or value of shares devised is clearly disproportionate that interpretation will be given which will equalize the heirs as nearly as possible.

5. Wills—Rule as to Equalization of Shares of Heirs Held Not Applicable.—Where complaining heir was given not only a certain sum in cash, but all advancements made to his parents by the testator were canceled, the amount of such advancements not appearing, a complaining heir cannot invoke the rule that, when there is doubt as to meaning of testator, and the extent or value of shares devised is greatly disproportionate, that interpretation will be given which will equalize the heirs as nearly as possible.

6. Wills—All of Testator's Language to be Given Effect.—In construing a will, all of the testator's language is to be given some effect, if possible.

7. Courts—Precedents as Affecting Construction of Will.—As bearing on the construction of wills, no case unless it is identical in its facts can serve as controlling precedent of another, for differences, though slight in themselves, may through the relation of other facts, turn the balance one way or the other.

8 Assignments for Benefit of Creditors—Purchaser of Land at Decretal Sale Obtained Only Title and Right of Debtor.—Purchaser of land at a decretal sale made pursuant to an assignment for benefit of creditors obtained no greater interest in remainder in land than was held by debtor.

WILSON & HARBISON and N. D. MILES for appellant E. B. Muir.

ALLEN & DUNCAN for appellants H. C. Muir and his children. BRONAUGH & BRONAUGH for appellant S. B. Muir.

E. C. O'REAR, W. L. WALLACE and EVERITT B. HOOVER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Samuel Muir, Sr., died testate and a resident of Jessamine county in 1885, and prior to the eighth day of August, on which day his will was duly probated in the county court of that county. He left surviving him as his only heirs at law his widow; one married daughter, Lavinia Daniel, whose husband was then living; one son, E. B. Muir, Sr., and the appellant and plaintiff below, S. M. Richardson, the only child of a deceased daughter, who died before the execution of his will. At the time the will was executed, and at the time of the testator's death, his son, E. B. Muir, Sr., was married and had three living sons, appellants, Samuel Muir, Henry C. Muir and Elijah Muir, Jr. At the same time the daughter, Lavina Daniel, had no children. Her husband died in 1886, about one year after the death of the testator, but she survived until November 6, 1920, leaving no descendants. The testator's son, Elijah Muir, Sr., died on the 12th day of April, 1910, leaving surviving him as his only heirs the same three sons, Elijah, Jr., Samuel and Henry C. Muir.

By item 1 of the testator's will (it being so divided) he left to his daughter, Lavinia Daniel, certain specified legacies and also devised to her a tract of land in Jessamine county containing 276 acres "for and during her natural life and that of her said husband and on their death the same is to revert back to my estate and pass equally to such of my heirs as are then living, but in case she dies leaving issue of her body, the same then to pass and vest in such issue." Item 2 was in this language: "To my grandson, Samuel Richardson, I will and devise in fee $8,000.00 in cash to be paid to him by my executor and out of my estate and which with advancements heretofore made by me to his father and mother, to be in full of his entire interest in my estate." In item 3 there was given to the testator's son, Elijah Muir, Sr., certain legacies and a farm in Jessamine county containing 280 acres; and in item 4, the testator gave to his grandsons, children of Elijah Muir, Sr., all the balance of his property, real, personal or mixed, with certain provisions as to how it should be managed, and fixing a time for its division by his executor named in item 5. After the death of Lavinia Daniel in 1920 without issue, plaintiff and appellee, S. M. Richardson, brought this equity action in the Jessamine circuit court against the defendants and

appellants, who were heirs of the testator at the time of the death of Lavinia Daniel, and in his petition he alleged the above facts, and averred that under the language of item 1 of the will he, at the death of Lavinia Daniel, leaving no issue, became vested with a one-half interest in the 276 acres of land devised therein, and he prayed to be so adjudged. Demurrers filed by the different defendants to the petition were overruled and in their answers they denied plaintiff's right to recover any interest in the tract of land, but that if the will should be so construed as to give him any interest, then he was entitled to only a one-fourth interest, the other three-fourths going to the three surviving children of E. B. Muir, Sr. In other words, defendants contended that if plaintiff was entitled to share in the tract of land it was only *per capita* and not *per stirpes*. They also alleged in a separate paragraph that prior to January 30, 1895, E. B. Muir, Sr., made an assignment of all of his property to W. L. Steele for the benefit of his creditors and that on the date mentioned the assignee filed an action in the Jessamine circuit court to settle the assigned estate; that prior to that time E. B. Muir, Sr., had become largely indebted to various persons, including his son, the appellant, E. B. Muir, Jr., who was made a party defendant to the assignee's settlement suit; that the latter filed his answer therein and made it a cross-petition against plaintiff herein, who was at that time a non-resident of the state, and that on the cross-petition he was brought before the court by constructive process followed by the appointment of a non-resident attorney to represent him, who filed his report therein; that in that pleading it was averred that the assignee, E. B. Muir, Sr., owned under the will of his father (testator herein) the entire contingent remainder interest in the 276 acres of land and that upon final submission of that cause the court so construed items 1 and 2 of the will here involved and expressly adjudged "that under the will of said Samuel Muir the defendant, Samuel Richardson, under item second of said will is not entitled to any part of said land, nor to the proceeds of the sale thereof," and the future contingent interest (being all of it) was ordered sold as a part of the assets of the assignor, E. B. Muir, Sr.; that it was afterwards sold by the master commissioner of the court and appellant, E. B. Muir, Jr., purchased it and subsequently obtained the Commissioner's deed to it, and

that proceeding, with the judgment therein, was interposed as a bar to plaintiff's right to recover in this action.

Demurrers filed by plaintiff to the different answers of defendants were sustained and, they declining to plead further, judgment was rendered in favor of plaintiff sustaining his contention to a one-half undivided interest in the 276 acres, and from that judgment this appeal is prosecuted. It will at once be seen that the questions for consideration are (1), whether plaintiff, under the terms of the will of his grandfather, is entitled to any interest in the tract of land in controversy; (2) if so, whether such interest is to be measured by a *per capita* or a *per stirpes* right, and (3), whether the judgment in the assignee's suit construing the will as depriving him of any interest in the land bars him from maintaining this action.

The solution of question (1) calls for a construction of the language of the testator employed by him in his will so as to discover his intention, as expressed thereby, since such intention as so gathered is the cardinal rule guiding courts in the interpretation of wills. It is sometimes called the "polar star" which should direct the court in its effort to arrive at a true interpretation, so much so that all other provided rules are subordinate and subsidiary to it. Indeed, such subordinate and subsidiary rules are called into operation only as aids in arriving at the correct intention of the testator when it can not be clearly ascertained from the language employed. It is, therefore, the rule in this court, which is fully sanctioned by text writers and opinions of other courts, that if the intention of the testator appears with reasonable clearness from the language of his entire will, without the assistance of other rules of interpretation, then that intention will be given it without resorting to such assistance. If, however, his intention as gathered from the language is doubtful and more or less contradictory then the assisting subordinate rules may be employed, but only for the purpose of enabling the court to penetrate the uncertainty or ambiguity and discover his real intention. The outlined method of construing and interpreting wills has been so often reiterated by this court, and especially so of later years, that we deem it necessary to refer to only one of the very recent cases. Jones v. Jones, 198 Ky. 756. Accepting it, therefore, as our guide in this case, we will now proceed to a consideration of the terms of the will to ascertain the testator's intention.

The only language in it upon which plaintiff bases his right is found in item 1, saying: "And on their (Mr. and Mrs. Daniel's) death the same (276 acres) to revert back to my estate and pass equally to such of my heirs as are then living," provided Mrs. Daniel left no issue of her body. That language standing alone and without modification or qualfication by any other language in the will would no doubt sustain plaintiff's contention and entitle him to a share in the tract of land. But, in the very next and immediately following item the testator records that he has made advancement to plaintiff's father and mother and he devised therein to plaintiff $8,000.00 in cash, which, plus such advancements, was "to be in full of his entire interest in my estate." In subsequent items and portions of his will he disposed of his entire property and died intestate as to none of it. It will, therefore, readily appear that there is no room for the operation of the rule relied on by plaintiff's counsel to the effect that words of disinheritance, not followed by a disposition of the property, will not have the effect of excluding the heir to which they are applied. Numerous text writers as well as opinions are cited in brief of counsel for plaintiff in support of that rule, which is a thoroughly established one and with which we, as well as other courts, are in full accord. It is true that the quoted portion of item 2 of the will contains a partial exclusion of plaintiff and limits the property of the testator in which he is to share; and it would no doubt be true that if the testator left any undevised property, such partial exclusion might not be given the effect of depriving him of the right to share in it as an heir of the testator. However, such *pro tanto* application of the rule can not be administered in this case because the testator left no undevised property. In item 1 of his will he created a contingent remainder interest in the 276 acres to become absolute at the vesting event (the death of Mrs. Daniel and her husband without issue), in the members of the class who would be his heirs at that time, and such members were to share "equally" in that remainder. There is, therefore, nothing in the invoked rule sustaining plaintiff's contention.

Another subsidiary rule for the interpretation of wills is pressed upon us, which is that when there is doubt and the extent or value of the shares devised is greatly disproportionate that interpretation will be given which will equalize the heirs as nearly as possible. Like the rule

just considered that one has its office, and will be applied where the facts call for it; but we have no means of ascertaining from the facts of this record whether plaintiff has been discriminated against in the particular referred to, since item 2, not only gave him $8,000.00 in cash, but also cancelled all the advancements that had been made by the testator to his mother, and for aught that we know those advancements, plus the $8,000.00 given plaintiff therein, may have exceeded his distributable share. Furthermore, the other prerequisite to the application of this rule is also wanting in this case, since we do not regard the will as doubtful or ambiguous in the particulars referred to.

It will be observed that the words of exclusion in item 2 of the will have a ring of finality which could not be more forcibly or specifically expressed, and, we repeat, they follow immediately the only clause in the will containing language which might create a possibility for plaintiff's share under item 2 of the will to be eventually augmented, if he was alive at the vesting event created in the remainder of the land mentioned in item 1. To our minds there can scarcely be any doubt as to the testator's intention as expressed in the excluding language of item 2 of his will. We arrive at that conclusion, not only from the ordinary meaning of the words he employed, but from the further fact that, unless the exclusion referred to the remainder interest in the 276 acres, there was no property to which it could be applied, and a construction sustaining plaintiff's contention would convict the testator of employing language to no purpose whatever, which would violate another fundamental rule in the interpretation of wills requiring all of the testator's language to be given some effect, if possible. If it had been the intention of the testator to include plaintiff as a member of the class of his heirs who were to eventually take the tract of land, there would have been no use, earthly, in his inserting in item 2 of his will the excluding words, since there was no other property to which they could possibly apply. We, therefore, conclude from a careful survey of the language of the will that it was the intention of the testator to confine plaintiff's interest in his estate to the property given him by item 2 of the will.

But such conclusion does not rest alone upon our reasoning, since the same construction of similar language has been approved by other courts and text writers. In 40 Cyc. 1497, the text says: "A clause . . . restrict-

ing a particular beneficiary to a particular gift, will be upheld where the testator's intention to that effect is clear, although words of donation elsewhere in the will might otherwise have included such person or gift." In Page on Wills, 627, the same rule is stated and the text, *inter alia,* says: "And where the testator provides in his will that the rest of his estate shall be distributed among his children and grandchildren, it does not include a son whom he had previously expressly disinherited by the will; nor to a son to whom he had expressly given half of his estate where he devises the rest to his heirs." The excerpts have received recognition by this and other courts where the facts were analogous (there being none where they are exactly the same) in the cases of Upshaw's Heirs v. Sthreshly, 3 Bibb 444.; Rogers v. Moore's Devisees, 4 B. M. 22; Delph v. Delph, 2 Bush 171; Tisdale v. Mitchell, 12 Rich. Eq. (S. E.) 263; Dickison v. Dickison, 138 Ill. 541, 32 A. S. R. 163; In re Everitt's Estate, 195 Pa. St. 450, and Ellison v. Woody, 6 Munf. (Va.) 368. Counsel for plaintiff attempts to answer the argument of the Pennsylvania cases and the one from South Carolina, by citing other prior cases from those courts, which he claims announced the contrary rule; but our reading of the prior opinions he relies on did not convince us that they conflict with the later ones from the same courts. The language of the wills involved in those cases was substantially and materially different from the language of the Muir will, as well as those involved in the later cases from the courts referred to, and it is a well recognized fact that "No case unless it is identical in its facts can serve as controlling precedent of another, for differences, though slight in themselves, may, through the relation of other facts, turn the balance one way or the other." Home Tel. & Tel. Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Cl. 50. Our conclusion, therefore, is that it was the intention of the testator, Samuel Muir, Sr., to exclude plaintiff by item 2 of his will from participation in any property composing his estate, except that given him in that item, whether the right of possession was immediate or postponed, or whether the title was vested or contingent.

Neither are we of the opinion that E. B. Muir, Jr., under his purchase at the decretal sale, obtained any greater interest in remainder in the tract of land involved than was held by his father, E. B. Muir, Sr., which was a contingent one and was defeated upon the death of the contingent remainderman before the vesting event. His

purchase gave him the right to the exclusive title to the land, only in the event that his father succeeded thereto, but which because of his prior death he did not do. Roy v. West, 194 Ky. 96. Having reached the above conclusion in answer to question (1), the other two become academic, and we express no opinion upon them.

Wherefore, the judgment is reversed with directions to dismiss the petition and to adjudge the land to belong in equal parts to Samuel Muir, Jr., E. B. Muir, Jr., and Henry C. Muir. Whole court sitting.