## Ireland, et al. v. Cooper, et al.

(Decided November 20, 1925.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Wills—Testator's Intent, as Ascertained from Will as Whole, or by Presumptions, if Still Doubtful, Given Effect.—Primary rule of construction is to give effect to testator's expressed intent as as-

certained from will as whole, but where will, so considered, leaves mind in doubt, resource must be had to presumptions.

2. Wills—Presumptions as to Time of Death Referred to in Reversionary Clause Stated.—Where there is no intervening estate, and nothing appears in will to contrary, presumption as to personalty is that death of beneficiary without issue, in clause providing for reversion of property bequeathed to him to surviving devisees, refers to his death before testator, but as to realty that it refers to his death at any time.

3. Wills—Provision for Reversion to Surviving Beneficiaries on Death of Any Without Issue Held to Give Fee-Simple Title in Both Personalty and Realty to Beneficiary Surviving Testator.—Will providing that, "if any of the heirs above named should die without issue, the property bequeathed by me to them shall revert back to the surviving heirs," to mean, when construed with other provisions of will, that both realty and personalty should revert only in case of death during testator's lifetime, so that beneficiaries surviving testator took fee-simple title in both.

EDWARDS, OGDEN & PEAK and WILLIAM MIX for appellants.

E. J. McDERMOTT, SAM S. BILTZ and W. McKEE DUNCAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLARKE—Affirming.

This is a controversy over the construction of the will of Leven Cooper, who died in February, 1876. The will is dated February 5, 1866, and was probated April 17, 1876. It reads:

"I, Leven Cooper, of Jefferson county, Kentucky, being of sound mind and in possession of all my reasoning faculties, do hereby make my last will and testament, revoking all wills by me heretofore made.

"I give and bequeath to my wife, Sarah Cooper, out of my estate a comfortable support in accordance to a written agreement between her and me prior to our marriage, also my bay mare to dispose of at pleasure.

"I give and bequeath to my oldest son, William M., all debts, notes and receipts I hold against him for money and other property he has received from me.

"I give and bequeath to my second son, Thomas Price, all the lands on the south end of my farm running west from a stake on the line between the

farm of Simon Pottorff and mine to a corner mark or west side of farm corner of Cole's land. I also give all claims I hold against him for moneys he has received at sundry times from me. I also give to him Clarke's Commentaries of Old and New Testament.

"I give and bequeath to my son, Samuel Quartermons, the land lying north of the land bequeathed to Thomas Price, except the portion staked off to my son, Marcus L., also 1 feather bed and clothing for the same.

"I give and bequeath to my son, Marcus Lindsey, the remainder of my land (the three several portions of which are staked out and in possession of my three sons above named and whose several portions is well known to them.)

"I also give to Marcus Lindsey my family Bible.

"I hereby give and bequeath to my grandson, Henry Clay Ireland, a house and lot in Louisville on the north side of Walnut street between Jackson and Hancock streets.

"All moneys in my possession, all debts due me, after my funeral expenses are paid and all just debts settled, I desire to be divided equally amongst the heirs hitherto named, viz., William M. Cooper, Thos. P. Cooper, Samuel Q. Cooper, Marcus L. Cooper and Henry Clay Ireland.

"*Also I desire if any of the heirs above named should die without issue, the property bequeathed by me to them shall revert back to the surviving heirs to be divided amongst them.* (Our italics.)

"Also I desire that my sons, Thos. Price, Samuel Quartermons, and Marcus Lindsey shall each contribute equally out of the portion assigned them a sufficient amount for the support during the life of my wife, Sarah Cooper.

"I also give and bequeath to my daughter-in-law, Nancy Ann Cooper, my family carriage.

"I hereby appoint as executors to this my last will and testament Thos. P. Cooper, Samuel Q. Cooper and Marcus L. Cooper.

"Witness my hand this fifth day of February, eighteen hundred and sixty-six.

"LEVEN COOPER.

"Attest: Jas. M. Cummins,
W. A. Potorff."

The whole controversy turns upon whether the dying without issue in the clause we have italicized refers to the death of the named heirs and particularly Marcus Lindsey before the death of the testator or at any time.

If the former, Marcus Lindsey took an absolute fee in the land devised to him, since he died but recently and nearly half a century after his father, but if the latter be true, then he took only a defeasible fee, and as he died without issue the land devised to him "reverts back to the surviving heirs" of the testator.

The primary rule of construction is, as this and other courts have so often held, to give effect to the testator's expressed intention as ascertained from a consideration of the will as a whole.

But where the will when so considered still leaves the mind in doubt as to the testator's intention, recourse must be had to some of the presumptions that have been adopted as determinative of such doubt.

Assuming that the period referred to by a death without issue in the clause, *supra,* is not clarified by other provisions of the will, appellant contends the presumption is that it refers to a death at any time, whereas appellees insist the presumption is that it refers to a death of the devisee or legatee before the death of the testator. The case was tried below and briefed here long before the opinion in Mary Lou Atkinson v. R. G. Kern, 210 Ky. 824, was handed down. Hence each party found support for his contention in one or the other of the two distinct and irreconcilable lines of cases from this court on the subject which that opinion reviews.

As that conflict of opinion is conclusively and, we trust, finally settled by that opinion, just as was attempted in Harvey v. Bell, 118 Ky. 512, 81 S. W. 671, we need only to state the conclusion there reached in so far as applicable here, which is that where there is no intervening estate and nothing appears in the will to the contrary, the presumption as to personalty is that the dying without issue has reference to the death of the devisee before the testator, but as to realty it refers to his death at any time.

Applying that rule to the above will and assuming for the moment that it contains nothing requiring a different construction, the result would be that the testator intended that his named beneficiaries who survived him

should take absolute title to the personalty but only a defeasible fee in the realty devised them.

The remaining question then is: Does the will contain anything indicating a contrary intention?

The character of the personalty devised is such in each case as to indicate quite clearly, as is the presumption under the rule *supra,* that the testator intended it should vest absolutely upon his death. The chancellor so held, and as counsel have practically agreed upon that question we need pursue it no further.

This narrows the inquiry to whether the will indicates a like purpose with reference to the realty, which is just the reverse of the presumption which under the rule otherwise would control. We think as the chancellor held that it does.

The clause in question by its very terms attaches alike to the bequests to all of testator's "above named heirs." This fact of itself indicates rather strongly, although not conclusively, that he had in mind but one and the same period for a death without issue with reference to both personalty and realty. It further indicates, and this quite conclusively, that the bequest to each of his named beneficiaries should be affected in precisely the same manner by this clause. This manifestly would not result if the contrary presumption as to personalty and realty prevailed, since to William he gave only personalty, while he gave Thomas, Samuel and Marcus both personalty and realty and to appellant only realty.

Then again the language is that if any of the beneficiaries "should die without issue *the property* bequeathed by me to them shall revert, etc." The use of the term property in this clause which alone refers to reversion and is made applicable to all bequests whether of personalty or real estate, also indicates that the testator did not recognize or intend any distinction between personalty and real estate in the reversion thereby provided for, but rather that he intended the reversion to apply alike to all beneficiaries and all kinds of property of whatever kind devised them. Hence, considering the will as a whole, we can not escape the conclusion that it plainly indicates not only an intention to give to each of the named beneficiaries the same title precisely to the one as the other kind of property, but also that the testator did not intend that the personalty should revert upon the death of the devisee without heirs at any time but only in case of such death during his lifetime.

It results, therefore, from a consideration of the will as a whole that the beneficiaries who survived the testator took a fee simple title in both the personal and real estate devised them.

Judgment affirmed.