## Lightfoot et al. v. Beard et al.

(Decided June 21, 1929.)

JAMES & JAMES and CLAUDE MERCER for appellants.

J. R. LAYMAN, P. M. BASHAM and ALLEN R. KINCHELOE for appellee Beard.

MOORMAN, WALLS & BEARD for appellee Bank of Hardinsburg & Trust Compay.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

Will Miller died in March, 1901, testate and a resident of Breckinridge county, Kentucky. He left surviving him two daughters, the appellant and plaintiff below, Mary Lizzie Lightfoot, nee Miller, and Eula Miller, who in 1903 married the appellee and defendant below Herbert M. Beard, and she died childless in 1904, leaving a will by which she devised all of her property to her husband. These two consolidated equity actions, filed in the Breckinridge circuit court by Mrs. Lightfoot against defendant Herbert M. Beard and others, sought the correct interpretation of the will of Miller (which was executed by him in 1889), as modified by a codicil executed by him in 1894. The only child of Mrs. Lightfoot, Jane Lightfoot, an adult, was made a party to the litigation, as was also the Hardinsburg Bank & Trust Company, and upon final submission the court adjudged that under the testator's will, as modified by the codicil thereto, his two

daughters were devised and bequeathed an absolute estate in all of his property covered by his will, except his one-half undivided interest in and to a tract of land containing 1,000 acres situated in Breckinridge county, and as to it the daughters were devised their interest therein for and during their lives, and to the survivor, and then as directed in other clauses of the will, and that as to that portion of the testator's property the daughters were restrained by the terms of the will from alienating it during their lives. From that judgment Mrs. Lightfoot and her daughter prosecute this appeal.

The questions involved are of such a nature as to render necessary the insertion of the will herein, as well as the codicil, which it is claimed modified the will, so as to authorize the judgment appealed from, and which will be done at the expense of devoting the necessary space therefor. The original will of Miller, eliminating caption and signature, was and is in these words:

"First—I desire and will that all my just debts if any in existence at the time of my death shall be paid out of any money I may have on hand at the time of my death as also my funeral and burial expenses.

"Second—I will and devise to my children Eula Miller, Mary Lizzie Miller all of the real estate I may own and hold at my death, in the counties of Breckinridge and Hancock, state of Kentucky, to be divided equally between, or held jointly by them as they shall desire. I will and devise this real estate to my children as their and each of their separate estates; to be held by them and each of them as separate estates not in any wise subject or liable to control or debts of their husbands (if they or either of them should marry) and also limited so that they nor either of them nor their husbands nor either of them shall have power to incumber said estate or any part of it or place any liens of any character thereon it being my intention to so devise said real estate that my said daughters may have the use occupancy and profits thereof but not to subject the same in any manner to their or their husbands' disposal by sale or incumbrance or alienation by them by will or by deed or in any manner whatsoever.

"Third—I will and devise to my said two children all other real estate owned and held by me at

my death, wheresoever located (except as provided in the foregoing clause) and of whatever nature; devising to them, the said real estate equally, and devised to them as general estate.

"Fourth—I bequeath to my said two children, equally, all the bank and other stock and bonds, county, municipal, and railroad which I may hold and own at my death but I provide and direct that said bonds and stock shall not be sold by them or transferred by them or their husbands or incumbered by them or used as collateral or other security by them, but the same shall be held by the executor hereinafter named as trustee, who shall collect the interest on same and pay the same to my said children or to their guardians, if they or either of them are not at maturity, my said executor is directed and authorized to reinvest any proceeds of such stock and bonds as may mature and be called in, in like securities or United States bonds.

"Fifth—The remainder of the personal estate of which I may die possessed I bequeath to my said two children equally.

"Sixth—I provide and direct that should either of my children die childless that the remaining one shall inherit the property both real and personal herein devised and bequeath to such an one so dying and I will that the survivor shall take and hold all said property both real and personal and shall hold the same under and subject to the provisions of this will as to their original share.

"Seventh—Should both of my said children die childless I will, that all of the property both real and personal devised and bequeathed in this will shall be taken and held by such heir or heirs of my children on their paternal side (it being my intention that the paternal heirs under the law of descent and distribution) shall take all of my said property in the event that my said children should both die childless.

"Eighth—If my children or either of them shall leave issue, I will that such issue of either shall take the property devised and bequeathed herein. If both have issue such issue to take the share of their mother. If only one shall have issue such issue to take the property of both mother and aunt.

492

"Ninth—I hereby appoint my brother John Miller the executor of this will, who will also act as trustee under the fourth clause of this will. It is my desire that no bond be required of my said brother as either executor or trustee as aforesaid.

"Witness my hand and seal this the 1st day of February, A. D. 1889."

The codicil was thus phrased:

"I, Will Miller, being in sound mind do make this codicil to my last will and testament made and executed by me in the presence of N. McC. Mercer and David R. Murray on the 1st day of February, A. D. 1889.

"I will and declare that the second clause of said will be, and the same is so changed and modified as follows, to wit: That my said two daughters Eula Miller and Mary Lizzie Miller shall under said will and this codicil take and hold all the lands and real estate owned and held by me at my death wheresoever situated and located as their general estate and not as separate estate as is in said will provided, except I will and declare that the farm consisting of several original tracts and comprising of about one thousand acres situate in Breckinridge county, state of Kentucky, being my home farm comprised of several original tracts which adjoin shall be taken and by my said two daughters as their separate estate and so taken and held by them under the provisions of the said second clause of said will and according to its terms and as to said home farm (of which I own one-half interest to the other half being now owned by my said two daughters under the will of their uncle John Miller, decd.) the said provisions of said second clause of my said will are continued in full force and effect—but as to all other real estate which may be held or owned by me at my death said provisions of said second clause are removed and I devise such to my two daughters as general estate without prohibitions or restrictions as to sale or encumbrance. I hereby revoke and annul the fourth clause of my said will, and in lieu and stead thereof I make the following, to wit: I give and bequeath to my said two daughters Eula Miller and Mary Lizzie Miller all bank and other stock, bonds, county, municipal and railroad which I may hold and own at my

death, to hold same in their own sole separate and exclusive right, and to use and control the same free from the control and debts or liabilities of any husband they may now or hereafter have, said property to be equally divided between them. Witness my hand this the 21st day of August, A. D. 1894."

In the very recent cases of Gatto v. Gatto, 198 Ky. 569, 250 S. W. 833; Jones v. Jones' Ex'rs, 198 Ky. 756, 250 S. W. 92; Ewering v. Ewering, 199 Ky. 450, 251 S. W. 645; Greenway v. White, 196 Ky. 750, 246 S. W. 137, 32 A. L. R. 1385; Rogers v. Burress, 199 Ky. 766, 251 S. W. 980; Prather v. Watson's Ex'r, 187 Ky. 709, 220 S. W. 532; Muir v. Richardson, 201 Ky. 357, 256 S. W. 727; Weedon v. Power, 202 Ky. 542, 260 S. W. 385; Marshall v. Kent, 210 Ky. 654, 276 S. W. 563; Anderson v. Simpson, 214 Ky. 375, 283 S. W. 941; Walton v. Jones, 216 Ky. 289, 287 S. W. 710; State Bank v. Rose's Adm'r, 219 Ky. 563, 293 S. W. 1087—and others preceding and following them, the fundamental rule for the interpretation of wills or other written contracts is declared to be the ascertainment and enforcement of the intention of the party or parties executing it, and which is to be gathered from the language contained in the writing from its inception to its close; the latest case in which it was so done being Parepoint v. Parepoint's Adm'r, 228 Ky. 639, 15 S. W. (2d) 513.

In the Ewering case we held, following that rule, that it was competent for a testator or a vendor to qualify, cut down, or limit by a later clause of the conveying instrument an estate created by a previous one phrased in absolute terms and, but for the later qualifying clause, would convey an absolute fee-simple title. It was also explained in that opinion that the giving of that effect to such later qualifying clause, under such circumstances, was forbidden by the rule at common law and was at first approved by many of the courts of this country, including this one, upon the ground that a fee title once created could not later in the same instrument be limited, nor could a future estate be limited after the fee given in the first clause of the conveying paper. We pointed out therein that, after the passing of the English Wills Act, and statute of uses, such future estates could be limited in derogation of a prior fee, and that if the language employed (and under submission) clearly expressed an

intention on the part of the maker to so qualify or limit the first estate that intention should be enforced under the later and logical rule supra; i. e., that it was the maker's plain intention to do so. Choosing to follow the imperative rule of administering the plain intention of the one who executed the particular instrument under consideration, and to reject the ancient common-law rule (although followed in some of the prior opinions of this court), we said in the Ewering opinion:

"But more recently this court has held that, since a will is not complete until all of it is written and duly executed by the testator, and since the first clause giving an absolute estate is not effectual for any purpose until the will is executed, and if the testator before doing so inserts a sentence or clause qualifying the absolute one and thereby manifesting his purpose and intention not to devise an absolute estate by the first sentence or clause he used, his intention so manifested would be given effect; but, if the subsequent clause was so worded as not to destroy the power of the devisee to exercise the chief right of an absolute owner to dispose of and consume the property, it would be construed as not qualifying or limiting the absolute estate first given and, therefore, ineffectual for any purpose. If, however, the subsequent clause was such as to destroy the power of disposition in the first and apparently absolute taker [as absolute owner and not under a conferred power], and itself made disposition of the entire property after his death, then he would take only a life estate, the same as if it was expressly so stated in the will, upon the ground that such a construction clearly conformed to the plainly manifested intention of the testator. When, therefore, a will devises or bequeaths property to one absolutely, and in a subsequent clause all of the same property is disposed of to others after the death of the first taker, the latter will be deemed as having only a life estate in it; but, if the limiting clause purports only to dispose of that portion of the property which the first taker does not consume or dispose of, and therefore operates only on some remaining portion of it, it will be given no effect, and the first taker will be deemed as taking an absolute estate, since in that event his absolute estate with the accompanying right to dis-

pose of the property is not curtailed or diminished in any respect.''

That opinion followed some recently prior ones adhering to the same interpretative rule and which were: Phelps v. Stoner's Adm'r, 184 Ky. 466, 212 S. W. 423; Plaggenborg v. Molendyk's Adm'r, 187 Ky. 509, 219 S. W. 438; Linder v. Llewellyn's Adm'r, 190 Ky. 388, 227 S. W. 463; Greenway v. White, 196 Ky. 750, 246 S. W. 137, 32 A. L. R. 1385; and American Christian Mission Society v. Tate, 198 Ky. 621, 250 S. W. 483. In the last-cited case, in emphasizing this court's position upon the subject, we said: ''If we but let the will speak for itself, instead of attempting to construe its plain, unambiguous terms according to a set of abstruse and arbitrary rules, there is not a chance to make a mistake; but if we apply the common law rules we are led far afield. The modern tendency of courts everywhere is to discard, when it can be done, all technical rules of construction anciently employed in the interpretation of deeds and wills, and measure the document by plain, common sense, giving it such meaning as its maker, a rational being, is bound to have intended by the words employed.''

The holding in the Ewering case, upon the point now under consideration, was referred to by this court with approval in the succeeding cases of Alexander v. Hendricks, 201 Ky. 677, 258 S. W. 81, Cox v. Glass, 214 Ky. 600, 283 S. W. 943, Walton v. Jones, 216 Ky. 289, 287 S. W. 710, and the Parepoint case, supra. That rule, which might be termed as the modern one, adopted and applied by the cited opinion, is so thoroughly intrenched in reason and logic, and is so completely in accord with the prevailing guide for the interpretation of wills (sometimes designated as the ''polar star'' for the guidance of courts), i. e., that the intention of the testator as gathered from all parts of the will should be administered, that we can see no just reason from departing in the slightest from the doctrine of those cases.

According to it, if the testator, Miller, in this case had bequeathed in clause 2 of his original will the undoubted absolute fee title to his daughters to all or some of the land therein involved, it was still competent for him to cut down and qualify that absolute estate, as was done in its clauses sixth, seventh and eighth. The last three clauses may have been actually written after writing the second one, but all of them were executed at the

same instant of time, when the testator duly subscribed the completed will, followed by proper attestation. Likewise would it have been competent for him in the same manner to qualify, limit, or otherwise amend the fourth clause of his will, if as originally drafted it had bequeathed the absolute title to the personal property therein mentioned.

Having said this much, we will now briefly notice the terms of the codicil and discuss what effect they had upon the will as first executed. In the second clause of the original will only the real estate of the testator situated in the counties of Breckinridge and Hancock, Kentucky, were mentioned or attempted to be disposed of. In doing so the language employed was: "I will and devise this real estate to my said (two) children as their and each of their *separate* estates." Our emphasized word was, no doubt, employed for the purpose of taking away the rights of any future husband that they might marry, in and to the real property devised, since at that time our statute, commonly known as the "Weissinger Act" (enacted in 1894 [Ky. St. secs. 2127-2748]), had not become a law. But he continued, after employing the positive language embodied in the last above excerpt, and specifically directed that none of such real estate should be subject to the control of or liable for the debts of any husband that either of them might marry, and with the further express qualification that neither of his daughters nor their husbands should "have power to incumber said estate or any part of it, or place any liens of any character thereon." That inhibition was immediately followed, without separating punctuation, by the declaration that his intention was to devise such real estate so that his daughters might have the occupancy and profits of it, but without the power on the part of them or their husbands to sell or incumber it by will, deed, "or in any manner whatsoever." In other words, the testator attempted to prescribe limitations in that clause of his will which the law positively forbids, since, in the absence of clauses sixth, seventh, and eighth, the language employed in clause 2 was sufficient to create an absolute estate in his two daughters to the real estate mentioned therein, and at least some of the restrictions upon such absolute ownership would be nullified in proper legal proceedings for the purpose and the otherwise absolute title be freed from them.

The same may be said with reference to the fourth clause of the will, wherein the testator devised his personal property, consisting of stocks and bonds, to his two daughters with like restrictions, and, we repeat, that were it not for the subsequent clauses of the will (sixth and seventh and eighth) an absolute title to the personal property mentioned in that clause would in all probability be decreed to the testator's two daughters. But, however that may be, we find that the codicil expressly referred to only two clauses of the will (second and fourth) and only purported on its face to modify and qualify those two clauses.

The prevailing rule with reference to the interpretation of codicils, in connection with the original will, is that ''a will and codicil must be read together as one instrument, and so far as practicable must be reconciled and recognized together as one consistent whole.'' Guthrie v. Guthrie's Ex'r, 168 Ky. 805, 183 S. W. 221; Armstrong v. Armstrong, 14 B. Mon. 333; Norton v. Moren, 206 Ky. 415, 267 S. W. 171. See, also, to the same effect, 28 R. C. L. 197, sec 155; 199, sec. 157, and 40 Cyc. 1420. Both the will and codicil, as so read together, under an equally well established rule, speak from the date of the testator's death. Under that rule courts regard a codicil as ''a republication and ratification of so much of the prior will as it does not revoke.'' 28 R. C. L. 197, sec. 155. And the above domestic cited cases in discussing the same point declare the same doctrine. It was most convincingly, as well as lengthily, so done in our opinion in the Norton case, and in doing so we employed this language:

''On the other hand, though the intention of the testator is the test in determining how far the revocation of a will is affected by a codicil, as in all other cases of testamentary construction, it is the established rule not to disturb the disposition of the will further than is absolutely necessary for the purpose of giving effect to the codicil. 1 Jarman, Wills (3d Eng. Ed.) 162 et seq.; Quincy v. Rogers, 9 Cush. (Mass.) 291; Doe v. Ward, 18 Q. B. 197, 16 Jur. 709, 21 L. J. Q. B. 145. Another statement of the rule is that a codicil will not operate as a revocation of previous testamentary provisions beyond the clear import of its language. Colt v. Colt, 32 Conn. 422. And an expressed intention to change a will in one particular negatives by implication an intention to

alter it in any other respect. Mason v. Smith, 49 Ala. 71; Ladd's Estate, 94 Cal. 670, 30 P. 99; Quincy v. Rogers, supra. Or as said in Doe dem. Hearle v. Hicks, 8 Bing. 349: 'If there is only a reasonable doubt whether the cause of revocation was intended to include the particular devise, then such devise ought undoubtedly to stand.'

"Following these rules is the case of Ives v. Ives, 4 Jur. 265, 4 Y. & C. Exch. 34. There the testator devised and bequeathed certain real and personal estate to his daughter for life, with limitations over to her children living at her death, or in default of children to others. By codicil reciting the devise and bequest and also the limitations over, the devise and bequest were revoked 'so far as relates to my said daughter,' and in lieu thereof, the testator directed that his trustees and executors pay his daughter a guinea a week for and during her natural life; but 'estates' both real and personal out of which the interest for the tenant for life was carved were directed to sink into the residue. It was held that the codicil did not affect the limitations over, but revoked only the interest in the tenant for life."

In the light of what is contained in that excerpt, so recently uttered by this court, it is impossible for us to conclude that the testator in this case intended by his codicil to accomplish any more than a reformation of the *second* and *fourth* clauses of his will, so as to remove some of the restrictions therein contained (both legal and illegal), and to include in the second clause lands not mentioned in it as contained in the original will. In the inserted excerpt from the Norton opinion we declared the established rules to be "not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil," and that "a codicil will not operate as a revocation of previous testamentary provisions beyond a clear import of its language," and that "an expressed intention to change a will in one particular negatives by implication an intention to alter it in any other respect." Authorities are cited in support of those statements, and applying them to this case we find that the express mention in his codicil by the testator of the second and fourth clauses of his will negatives his intention to alter other clauses, including, of course, the sixth, seventh, and eighth ones, wherein the estates and interest given by the second and

fourth ones were limited and qualified, and which, under the rule announced in the Ewering and other cases, supra, it was competent for the testator to do.

Full, and no doubt the intended effect may be given to the codicil by construing it as removing the restrictions contained in the original second and fourth clauses of the will, and rendering the estate granted in them unhampered by such restrictions, and also by including other land in the second clause that the testator had entirely omitted therefrom in the original draft of his will. Under the doctrine of the Norton opinion we are not permitted to go further "than is absolutely necessary for the purpose of giving effect to the codicil," and after giving the above indicated effect we are not justified in disturbing other portions of the will, so as to make the codicil operate as a revocation of other previous testamentary provisions and which, if done, would clearly be "beyond the clear import of its (codicil) language."

The trial court adopted the view of defendants' counsel to the effect that the codicil revoked the sixth, seventh, and eighth clauses of the will, and retained only the modified second and fourth clauses, and which it construed as conveying an absolute title to testator's two daughters to all the property covered by his modified will, except his interests in the 1,000 acre home place in Breckinridge county. The dissenting members of this court are in accord with that view, but which we, for the reasons stated, cannot accept. On the contrary, it is our conclusion that the sixth, seventh, and eighth clauses of the will were untouched by the codicil, and that they continued after its execution to remain component parts of the will, and which had the effect, under the doctrine of the Ewering opinion and its companion cases, to reduce the interests of the two daughters in both classes of property to a life interest only, and then to the survivor for her life, and then as directed in the sixth, seventh, and eighth clauses of the will.

But it is insisted by counsel for defendants that the expressions in the sixth, seventh, and eighth clauses of the testator's will providing for and directing the disposition of his property, "both real and personal," should either of his children "die childless," or "leave issue," refer to their death without children or without issue before that of the testator, and not to their death at any time, but with which we do not agree. In the comparatively recent case of Atkinson v. Kern, 210 Ky. 824, 276

S. W. 977, we had before us the same question, and in that opinion we reviewed prior conflicting ones, and came to the conclusion that certain enumerated ones (some of which are relied on by counsel for defendants in their brief), should no longer be followed, but that the rule announced in the case of Harvey v. Bell, 118 Ky. 512. 81 S. W. 671, 26 Ky. Law Rep. 381, was the correct one, and which we held to be in accord with section 2344, of our present Statutes, prescribing that such contingent words shall be construed as "a limitation to take effect when such person (the one to whom they are applied) shall die," unless a different purpose be plainly expressed in the instrument.

The Atkinson opinion followed the prior ones of Linton v. Hail, 201 Ky. 698, 258 S. W. 111, and Kimbrell v. Parmer, 202 Ky. 686, 261 S. W. 11, and in the Linton opinion the holding of this court in the Harvey case was classified into four subdivisions, in each of which such limiting expressions would receive the application indicated in the classifications under the facts stated in each subdivision, the fourth one of which said: "Where there is no intervening estate, and no other period to which the words 'dying without issue' can be reasonably said to have reference, they are held, in the absence of something in the will showing a contrary purpose, to create a defeasible fee (in the first taker), which may be defeated by the death of the devisee at any time without issue surviving him." The case stated in that subdivision is one where there is no devise over upon the event of death "without issue," or "without children," etc.; but it is our conclusion that the fact of a devise over upon such contingency would not alter that rule. However, the rule itself, as well as the other three in the classification, are but rules of construction, and surrender to a manifest intention to the contrary.

In this case the testator used language in the sixth, seventh, and eighth clauses of his will clearly and unmistakably indicative of an intention to refer such expressions to the death of either of his daughters *at any time*. He was so particular in that regard as to prescribe in the seventh clause of his will that, if both of his daughters should die childless, then "all the property both real and personal in this will shall be taken and held by such heir or heirs of my children on their paternal (his) side," and, as if by way of emphasis, he parenthetically said in the same clause, "It being my intention that the paternal

heirs under the laws of descent and distribution shall take all my said property in the event that my said children should both die childless.''

But it is further insisted that the rule announced in the Atkinson and other domestic cases does not apply to personalty, and in support of that contention the case of Ireland v. Cooper, 211 Ky. 323, 277 S. W. 483, is relied on. But it is expressly recognized in that and other domestic opinions in accord therewith that the doctrine of the Atkinson opinion *will* apply to devises of personalty, *if* the language of the testator, expressive of his intention, so indicates. Our last excerpts from the will clearly indicate such an intention. Indeed, the testator expressly says in the clauses of his will referred to that the provisions therein shall apply to ''both real and personal'' property, and which expression he repeats in all of the limiting and qualifying clauses, and which also applies to the *final* disposition of his property to the *paternal heirs* of his two daughters. It is our conclusion, therefore, that it was almost impossible for him to more emphatically express his intention to apply the limiting clauses in his will to his personal property as well as to his real estate.

Finally, it is alleged in the pleadings, including those of defendant, that the testator at the time of his death owned 20 shares of the capital stock of a bank in Cloverport, Ky., and 20 shares of the capital stock in the Bank of Hardinsburg & Trust Company, in Hardinsburg, Ky., and that upon a division of that stock it was agreed that Mrs. Lightfoot would take the stock in the Cloverport bank and her sister that in the Hardinsburg bank, which was done. It appears that after the death of the testator, and perhaps after the division between the two daughters, the Hardinsburg bank declared a stock dividend of 100 per cent., and that it was delivered to the life tenant. A deposition given by an officer of the Hardinsburg bank indicates that two such dividends were declared after the testator's death, and that the stock he owned at that time in the Hardinsburg bank was only 10 shares, of the par value of $100 each. That testimony, if true, is unsupported by the pleading, and we are not now prepared to direct what specific judgment to enter upon a return of the case. However, it is the rule in this jurisdiction that stock dividends belong to the life tenant. Goff v. Evans, 217 Ky. 664, 290 S. W. 490, and other cases cited in these opinions. Following that doctrine, Mrs. Lightfoot should not

recover any of the stock in the Hardinsburg bank, except that owned by the testator at the time of his death; the life tenant being entitled to additions thereto in the way of stock dividends.

Something is said in one of defendant's pleadings about an existing contract between him on the one side and Mrs. Lightfoot and her daughter on the other, relating to the purchase by defendant of his deceased wife's interest in the home tract of land in Breckinridge county, containing about 1,000 acres, or of the entire interest therein devised by the testator to his two daughters; but which one is true we are unable to discover from the pleadings, nor was any such contract or a copy thereof filed with the pleading. The trial court declined to enforce that contract, and in the absence of a showing of some reason why that judgment should be disturbed we now decline to do so.

Therefore, in so far as the court so declined the judgment is affirmed, but in all other respects it is reversed, with directions to set aside the judgment and render one in conformity with the principles of this opinion; but in view of the condition of the pleadings and proof as to the amount of bank stock owned by the testator at the time of his death, and as to other personal property, if any, allotted to Mrs. Beard and appropriated by defendant, the parties may amend their pleadings according to the facts and take proof on those issues.

Whole court sitting; Judges CLAY, WILLIS, and LOGAN dissenting.

### DISSENTING OPINION BY JUDGE WILLIS.

It is not the rules of construction but the construction of the will, announced by the prevailing opinion, that forbids my concurrence. The will, as corrected by the codicil, is not permitted "to speak for itself" to manifest the plain intention of the testator, but it is subjected to the rules that have emerged from the long struggle between the conflicting theories applied in cases like Ewering v. Ewering, 199 Ky. 450, 251 S. W. 645, as contrasted with those accepted in cases like Clay v. Chenault, 108 Ky. 77, 55 S. W. 729. The cases upon that subject, like Swiss soldiers, fight upon both sides, and the simple plan, structure, and purpose of Miller's will is sacrificed in the struggle for supremacy. With these conflicting legal theories there is now no occasion to deal. We put

them all aside, and, for the purposes of this case, assume the accuracy and accept the authority of the cases cited in the controlling opinion.

The fallacy into which the court has fallen, as I see it, is the failure to give the proper scope and significance to the documents we are called upon to construe. It is not a case for applying rules of construction to a single ambiguous sentence or clause or paragraph by which a devise or bequest is expressed. We have a document consisting of many provisions, amplified and amended by a later document, which controls to the extent necessary to effectuate the purpose and execute the plans of the testator. These two documents are plain and unambiguous, and rules of construction are not necessary, American, etc., Society v. Tate, 198 Ky. 621, 250 S. W. 483. All the authorities cited by the court agree that it is necessary to ascertain the intention of the testator as expressed in his will and the codicil thereto. The proper method of approach, in construing any writing, is from the standpoint of the author of the document. This is universally acknowledged.

Will Miller had two infant daughters, and owned lands and stocks and bonds, and other personal property. The dominant desire of Miller, it may be safely assumed, was to provide for his children and to protect them against their own improvidence, or that of their husbands, if they grew up and married. When Miller came to prepare his will in 1889, he provided first for the two children to have his land located in the counties of Breckinridge and Hancock, to be equally divided or jointly held. But he surrounded that land with safeguards to protect the daughters from any mistakes of themselves or their husbands. He declared in just so many words (section 2 of the original will): "It being my intention to so devise said real estate that my daughters may have the use, occupancy, and profits thereof, but not to subject the same in any manner to their or their husbands disposal by sale, or incumbrance, or alienation by them by will, or by deed, or in any manner whatsoever." It will be observed that the restriction was on the land, and not on the income or profits thereof. In my opinion that section of the will describes and delineates a life estate in the land about as well as could be done. 21 C. J. 938; 10 R. C. L. 661. The remainder interest in the Breckinridge and Hancock county lands was left to be disposed of by other clauses of the will.

But Mr. Miller had other lands than those described in the second section of his will, which he desired to devise to his daughters, but which he did not desire to be restrained by the limitations placed upon the lands devised by section 2. He wished them to have different and greater powers respecting it. So, by the third section of his will, he devised to his two children all other real estate owned by him at his death, wheresoever located (except as provided in the second clause), and of whatever nature, "devising to them *the said real estate equally*" and as general estate. This was a devise of the land itself, and was not limited in any manner to the income or otherwise. He put no restrictions on the title or use, and it seems too plain for argument that by treating the two subjects separately, so as to put the limitations on the one and to omit them from the other, he was granting a fee in one and a life estate in the other. Dickson v. Dickson, 180 Ky. 423, 202 S. W. 891, L. R. A. 1918F, 765; Duncan v. Berry's Adm'r, 142 Ky. 178, 133 S. W. 1148. If he was devising merely a life estate in each, there was no sense at all in making the separate sections, or the meticulous provisions to show the nature of the grant in the second clause and to protect it from sale or incumbrance. The course pursued makes it clear that clause 3 of the will devised a fee-simple estate in the land covered by it. The prevailing opinion gives no force to this significant circumstance, and thus fails to give effect to the intention of the testator, or to effectuate the purposes of the will.

The fourth section of the will deals with bank stock and certain bonds. They are bequeathed to the two children, but a sale is prohibited and a transfer is forbidden. The restrictions are expressly extended to any husbands the daughters might have, and those stocks and bonds may not be incumbered, pledged as collateral, or put up as security in any form. Then, to make assurance doubly sure, the testator put them in trust, with directions to the trustee to collect the interest and pay it to the children, or their guardians, if they should not be of age. Thus that particular personalty was put in trust for his children, but they were to enjoy the income unreservedly. Plainly that provision of the will created a life estate in that portion of the personal property. 21 C. J. 1038, 1039; 23 R. C. L. 491; 17 R. C. L. 61; Stallcup v. Cronley's Trustee, 117 Ky. 547, 78 S. W. 441; Sherley v. Sherley, 192 Ky. 122, 232 S. W. 53. The remainder interest

was not mentioned then, but it was a proper subject of disposition by later clauses of the will. It must be noted that the limitations and restrictions were on the stocks and bonds, and not on the income, which was given to the girls absolutely.

But Miller had other personal estate, not covered by clause 4, which he disposed of by the fifth section of his will. He bequeathed all his other personalty to his two children equally. It was not affected by the restrictions which he had placed upon the stocks and bonds by section 4. That evidences a plain and unmistakable purpose to give the girls his other personal estate in fee simple. If he meant to give only a life estate in that property, as he had done respecting the stock and bonds described in the fourth section of his will, there was no reason for making it the subject of a separate bequest in such comprehensive terms. The fact that he put his lands in two classifications, and devised it in radically different terms, by distinct provisions of his will, leads inevitably to the conclusion that he meant to create and confer different titles respecting it. That he did the same thing in disposing of his personal estate renders this deliberate and intelligent plan most obvious. It was his primary purpose and studied plan to fix a home for his children beyond the perils of their indiscretion, and, at the same time, to provide an income from the bank stocks and bonds which they could not imperil. But as to all the other estate he left them free to own, use, and dispose of it, as any other owner. All of his care and thought, however, was vain and useless, if the majority opinion is correct, for it construes the subsequent provisions of the will to reduce it all to a life estate, which needed none of the restrictions or limitations devised by the testator, and made them all wholly unnecessary and inappropriate. It puts limitations on the estate that the testator deliberately omitted.

But it is said that clauses 6, 7, and 8 of the will disposed of all the property, real and personal, in certain contingencies, which must be understood to reduce all the prior devises and bequests to mere life estates. In the first place, clauses 6, 7, and 8 were meant to control the devolution of all the property only in the events contemplated by them. They used the words "all," or equivalent words, so as to embrace all of the estate in some contingency that might have arisen. The provisions of those clauses were broad enough to cover all contingencies that might possibly arise, but they were not to be applied in

every case, if the circumstances reasonably required other provisions of the will to prevail. The will was written without knowledge as to the time it might take effect, and it had to provide for any possible situation that could come up in the future. If the father and his two children had perished together, after the will and codicil were written, those provisions would have applied to all the estate. Circumstances are conceivable under which all the property may have passed under those clauses. But in the actual circumstances it could not be, for the literal application of the comprehensive words of clauses 6, 7, and 8 would include the income, which the girls consumed, and no one denies that the testator meant for his children to enjoy exclusively the income and profits both from the real and personal estate.

The true meaning of clauses 6, 7, and 8, as applied to the situation that actually arose, is that they control the devolution of the remainder interests that were left undisposed of by the previous provisions of the will, but had no application to the unlimited and unrestricted grants made by the will. These clauses had no reasonable application to clauses 3 and 5 of the original will, if the daughters survived their father. Harvey v. Bell, 118 Ky. 512, 81 S. W. 671; Ireland v. Cooper, 211 Ky. 323, 277 S. W. 483. It cannot be seriously supposed that the testator meant by clauses 6, 7, and 8 to destroy the careful classification, the particular limitations, and the absolute grants he had made in the dominant clauses of his will. It seems reasonable and necessary to construe clauses 6, 7, and 8, as affecting and embracing only the property left for disposition after the previous devises and bequests to his children had taken effect. Thurmond v. Thurmond, 190 Ky. 582, 228 S. W. 29.

Such is my conception and construction of the will as it stood before the codicil was added to it. I agree that the intention of the testator is the test in determining how far the revocation of a will is affected by a codicil, and that a codicil changes the will only so far as is absolutely necessary to effectuate the purposes expressed in the codicil. Norton v. Moren, 206 Ky. 415, 267 S. W. 171; Guthrie v. Guthrie's Ex'r, 168 Ky. 805, 183 S. W. 221. But I insist that the prevailing opinion nullifies the codicil, and gives it no effect whatever. The codicil was written 5½ years after the original will. The Weissenger Act (sections 2127-2148, Ky. Stats.) had gone into effect, enlarging the rights of married women respecting

their property. The codicil had to do with two parts of the original will. It first changed and modified section 2 of the will, by taking out of it all lands except one farm in Breckinridge county, and freed it from all the restrictions, but expressly leaving them in full force respecting the Breckinridge county farm; *"But as to all other real estate* which may be held or owned by me at my death, said provisions of said second clause are removed and *I devise such to my two daughters as general estate without prohibition or restrictions as to sale or incumbrance."* I challenge any lawyer to draw a document expressing more certainly the purpose of the testator to devise all his lands (except the Breckinridge county farm, which alone was subject to the restrictions against sale or incumbrance) in fee simple to his two daughters. The removal of the restrictions against sale or incumbrance left the devisees free to sell or incumber, and, if they got only a life estate, they could do neither. To say they took only a life estate utterly annihilates the codicil. The restrictions and limitations were not appropriate to life estates, and were not necessary, if only life estates had been granted.

The next part of the codicil dealt with section 4 of the original will, which put the bank stocks and bonds in trust for the girls, gave them the income, but prohibited any sale, pledge, or incumbrance of the stock or bonds. The codicil revoked that section 4, and in lieu of it gave the two girls an absolute and unlimited title to the property, free of all restrictions and limitations. But the codicil did not refer to clauses 6, 7, and 8 of the original will, and the court holds that those clauses reduced the absolute titles conferred by the codicil to mere life estates. As to the land the codicil conferred a right to sell and incumber without limit, which could not be done if the later clauses reduced the devises to life estates. A life tenant may not sell or incumber the property in which the life estate exists. A life estate itself is subject to sale or incumbrance, but its standing is so precarious that the right to sell or incumber is of small importance and insignificant value.

In so far as clauses 6, 7, and 8 are inconsistent with the codicil, they should yield, because such construction is absolutely necessary to give effect to the codicil. Norton v. Moren, 206 Ky. 415, 267 S. W. 171; Guthrie v. Guthrie's Ex'r, 168 Ky. 805, 183 S. W. 221; Deppen's Trustee v. Deppen, 132 Ky. 755, 117 S. W. 352; Harkness

v. Lisle, 132 Ky. 767, 117 S. W. 264; Bosley v. Wyatt, 14
How. (U. S.) 390, 14 L. Ed. 468. "Where a will and cod-
icil are irreconcilable, the codicil, as the last expression
of the testator, must prevail." When the restrictions of
clause 4 of the will were removed, it left in the daughters
an absolute title to that property, for then they could
sell, pledge, or do as they pleased with it. The unlimited
and unrestricted right to sell and dispose of property is
the great characteristic of absolute ownership. Bouvier's
Law Dictionary, vol. 3, p. 2437; McCullough's Adm'r v.
Anderson, 90 Ky. 127, 13 S. W. 353, 7 L. R. A. 836.

I think it was proper for the codicil to leave clauses
6, 7, and 8 in the will for application to the remainder in-
terest that was still subject to them after the codicil was
added and given effect. It was plainly the purpose of the
codicil—indeed, its only excuse for existence—to change
the character of the devise of the real estate under clause
2 and the bequest of the bank stock and bonds under
clause 4 of the original will. The life estate created in
the respective clauses of the original will were enlarged
by the codicil into absolute titles, without restriction of
any kind. Of course, the will and the codicil are to be
regarded as a single instrument, speaking as of the date
of the death of testator, for the purpose of determining
his intention; but the steps taken by the testator must be
traced (28 R. C. L. sec. 157, p. 199), and, when the codicil
substitutes a fee-simple title for a life estate, it necessar-
ily destroys a subsequent provision disposing of the re-
mainder interests that were no longer the subject of dis-
position. There was no remainder interest to dispose of
after the codicil became effective, except that preserved
in the 1,000-acre tract of land. The second and fourth
clauses creating remainders were revoked by the codicil.
It was the plain intent and express language of the codi-
cil to devise a fee-simple estate in all the real estate,
except the 1,000-acre farm, and it was to be the separate
estate of the daughters, free of all the restrictions in the
original will. The 1,000-acre tract, however, remained
subject to the second, sixth, seventh, and eighth clauses
of the will as originally prepared.

Thus we have three distinct estates created and con-
ferred by the will: First, the 1,000-acre farm was devised
to the two daughters for life as their separate estates,
subject to the prohibitions and restrictions of section 2
of the will as originally written. The remainder interest
therein was controlled by clauses 6, 7, or 8, as the case

might be. Second, the real estate other than the 1,000 acres was devised to the daughters in fee simple, and as general estate. Third, the personal property was bequeathed absolutely to the two daughters equally, for their sole and exclusive use and free from the debts and liabilities of any husbands. By virtue of his will and codicil, an absolute title was taken by the two daughters in the stocks and bonds mentioned in clause 4 of the original will, and therefore Eula Miller Beard had a right to dispose of her portion of that property, and to vest the appellee Herbert M. Beard with title thereto. It is likewise apparent that Eula Miller Beard had a right to dispose by will of the real estate devised to her in fee simple by her father. The 1,000-acre farm, however, is controlled by clause 2 of the original will, and since the death of Eula Miller Beard occurred without issue living, the life estate passed by the sixth clause to the appellant, Mary Lizzie Lightfoot, subject to the same limitations applicable to her original share. The remainder interest will pass according to the seventh or eighth clauses of the will, depending upon whether Mrs. Lightfoot is survived by issue.

I think the circuit court correctly construed the will, and that the judgment should be affirmed.

I am authorized to state that Judges CLAY and LOGAN concur in this opinion.